EDWARD RATAJCZAK, RESPONDENT, v. THE BOARD OF EDUCATION OF PERTH AMBOY, NEW JERSEY, PROSECUTOR.

Submitted October 12, 1934—Decided March 29, 1935.

Before Justices HEHER and PERSKIE.

For the prosecutor, *Joseph B. Schwartz.*

For the respondent, *John C. Stockel.*

The opinion of the court was delivered by

HEHER, J. The issue presented for determination is the validity *vel non* of a resolution adopted by the board of education of the city of Perth Amboy, on September 15th, 1933, whereby one Godlesky was "appointed school custodian to fill vacancy of Edward Ratajczak at usual salary less twenty per cent., effective October 1st, 1933." Ratajczak, invoking the provision of chapter 44 of the laws of 1911 (*Pamph. L.* 1911, *p.* 67), which protects public school "janitors" from discharge, dismissal or suspension, "except upon sworn complaint for cause, and upon a hearing had before" the board of education, appealed to the state commissioner of education, who found that he held the position of "janitor," within the intendment of the act, and ordered his reinstatement. The state board of education, upon appeal by the local board, affirmed this judgment. The local board thereupon sued out this writ of *certiorari.*

The decisive question, therefore, is whether Ratajczak, at the time of the adoption of the resolution, held a position protected by the act of 1911, *supra.* This must be answered in the affirmative.

We concur in the findings of fact made by the commissioner of education. This is the history: In October, 1928, when Ratajczak was first employed by the local board, his

father, John, and one James Lynch were the school janitors. Edward was employed to assist these janitors. At first he devoted four hours per day to the work, and later eight hours. His compensation was at the rate of fifty cents per hour. He was designated on the board's records as an "extra"—the classification accorded to those—principally women—who, under the supervision of the janitors, served as cleaners. In August, 1930, Lynch retired from the service, and his duties were thereupon assigned to Edward. The board insists that the latter's status as a mere employe of the board, a relationship terminable at will, was not in anywise altered, while Edward maintains that he was in fact appointed as school janitor in the place and stead of Lynch. While Edward's status on the school board's records was not changed—he was still carried as an "extra"—we are not left in doubt as to the intent and purpose of those in authority. He was in point of fact given the position held by Lynch. John Ratajczak and Lynch were severally in charge of one-half of the school building. Lynch was, apparently, advanced in years —age was the reason assigned for his retirement—and Edward was employed primarily to assist him. The board's business manager, and as such its agent charged with the care of school properties, Sheehy, testified thus on this crucial phase of the inquiry: "The father [John Ratajczak] spoke to me one day, asking whether it was not possible to have the boy put on as janitor at the regular monthly salary of $175. I told him that was up to the board of education, but that I would mention it to Mr. Gullman [Goldman], chairman of the building committee. I spoke to Mr. Gullman, telling him about the request of the father and he said that he was not in favor of giving him $175 per month, but I was instructed to tell Miss Goldstein, secretary to the superintendent, *to put him on at $140 per month. Q. In place of Mr. Lynch? A. Yes.*" Thereafter, Edward was in charge of the portion of the building assigned to Lynch, while his father continued as theretofore in charge of the remainder. Thereafter, his was the self same service rendered by Lynch. And he was accorded in fact the recognition that goes with

the janitorial status. He was given all the privileges of this class—the annual two weeks' vacation, a right not granted to those whose compensation was on an hourly basis, classified as "extras."

And when the board was compelled to function on a reduced budget, it submitted to its teachers and janitors, for signature, a memorandum expressing the signer's consent to a "donation" of a sum equivalent to six and one-third per cent. of the salary in the case of teachers, and eight and one-third per cent. in the case of janitors. Edward was asked to consent to the donation required of the janitors, and he agreed. He signed the memorandum of consent furnished by the board, which contained a reservation that "this donation shall in no way be construed to be a reduction or alteration of my salary for 1932-33 or a waiver in any respect of any and all rights which I may possess under the tenure and/or retirement laws of the State of New Jersey, and/or the present rules and schedules of the Perth Amboy board of education." This memorandum was identical in form with those submitted to and signed by all teachers and janitors in the school system. The chairman of the board's building committee, Mr. Goldman, on March 3d, 1932, reported to the board that the "janitors" had agreed to accept a reduction in salary; and the superintendent was thereupon directed to "again present the documents for the janitors to sign." No distinction, it will be observed, was made as to Edward. The "extras" were not called upon for a donation, and none was given. The same procedure was followed in the subsequent year when the teachers and janitors "donated" twenty per cent. of their salaries. The "extras" were again omitted from the list of employes called upon for a *pro rata* contribution from their fixed salaries. And it is significant, too, that the resolution under attack appointed Godlesky "school custodian to *fill vacancy of Edward Ratajczak,* at usual salary." Unquestionably, Edward was appointed a janitor in the statutory sense for an indefinite term. He was appointed by the business manager, Sheehy, and the vice-president of the board and chairman of its building committee, and as

such in charge of janitors, Mr. Goldman, who, quite significantly, was not called as a witness.

But it is insisted that these officers of the local board had no authority to employ Edward in the capacity of a janitor, and that it was the invariable custom to accomplish that by resolution of the board. Even so, there was, in the circumstances here presented, indubitable ratification by the board of the act claimed to be an excess of authority, but in any event done or professedly done on the board's account. *Goldfarb* v. *Reicher,* 112 *N. J. L.* 413; *affirmed,* 113 *Id.* 399; *Smathers* v. *Board of Freeholders of Atlantic County, Ibid.* 281; *Potter* v. *Metuchen,* 108 *Id.* 447; *Ballagh Realty Co., Inc.,* v. *Dumont,* 111 *Id.* 32; *Frank* v. *Board of Education of Jersey City,* 90 *Id.* 273. And there may be ratification by implication. Ratification may be implied from acts, words or conduct, on the part of the principal, which reasonably tend to show an intention to ratify the unauthorized acts or transacations of the agent. Of course, the principal must act in the premises with knowledge of the material facts. *Frank* v. *Board of Education of Jersey City, supra.* Such affirmance may be established by conduct justifiable only if there is ratification. 1 *Agency A. L. I.,* § 93. The board here is unquestionably charged with knowledge of the official acts of the mentioned agents, and of the contents of its own minutes. *Nicholson* v. *Board of Education of Swedesboro,* 83 *Id.* 36. As regards the insistence that it was the board's custom to appoint janitors by resolution, and that this was essential to a valid appointment, it is clear, that this custom did not come into being until 1933, after the appointment at issue. Moreover, the customary formalities may be disregarded; the performance of the preparatory steps may be waived. *Michaelis* v. *Board of Fire Commissioners of Jersey City,* 49 *Id.* 154.

Under the circumstances, the failure to change Edward's designation on the board's books, after his appointment, is of no moment. The business manager instructed the superintendent's secretary "to put him on" the books "at $140 per month." The interpretation given this instruction by

the secretary is of no significance in the face of what subsequently occurred. It results that the issue was correctly decided by the commissioner of education.

Judgment affirmed, with costs.