BOROUGH OF WOODSTOWN AND TOWNSHIP OF PILES-
GROVE, PETITIONERS-APPELLANTS, v. TOWNSHIP OF
LOWER ALLOWAYS CREEK AND PUBLIC SERVICE
ELECTRIC AND GAS COMPANY, RESPONDENTS.

CITY OF SALEM, TOWNSHIPS OF ALLOWAY AND PITTS-
GROVE, PETITIONERS-APPELLANTS, v. TOWNSHIP OF
LOWER ALLOWAYS CREEK AND PUBLIC SERVICE
ELECTRIC AND GAS COMPANY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 9, 1973—Decided June 29, 1973.

348

Before Judges FRITZ, LYNCH and TRAUTWEIN.

*Mr. George S. Friedman* argued the cause for appellant City of Salem and Townships of Alloway and Pittsgrove.

*Mr. Oakford W. Acton, Jr.* argued the cause for appellants Borough of Woodstown and Township of Pilesgrove.

*Mr. William C. Horner,* attorney for respondent Lower Alloways Creek Township, submitted a Statement in lieu of brief.

*Mr. Howard T. Rosen* argued the cause for respondent Public Service (*Messrs. Rosen and Weiss,* attorneys; *Mr. Walter G. Reinhard,* on the brief).

The opinion of the court was delivered by

LYNCH, J. A. D. This is an appeal from a decision of the Division of Tax Appeals (Division) which held that an action by a county board of taxation, acting in its "equalization" capacity pursuant to *N. J. S. A.* 54:3–17 to 19, and purporting to fix the assessment of an individual parcel of real property, did amount to such an "assessment" within the meaning of the statutes governing taxation of such property, and that such action was *res judicata* so as to preclude any further increase in the assessment of the property when appeals were filed with the county board of taxation pursuant to *N. J. S. A.* 54:3–21.

The appeal herein involves the local property tax assessment for the tax year 1971 upon property owned by Public Service Electric & Gas Co. (Public Service), known as Artificial Island, and adjacent property situate in the Township of Lower Alloways Creek, in Salem County. Consisting of approximately 700 acres in total, the property is being developed by Public Service for a nuclear power plant known as Salem Nuclear Generating Station. The plant site itself consists of 210 acres and is partially surrounded on the north and east by a "buffer zone" of 490 acres, with the Delaware River bordering the site on the west and south. Construction had begun on the project as of the date of the assessment in question, but no permanent buildings had been completed.

During February 1971, the County of Salem,[1] the City of Salem, the Township of Pittsgrove, the Township of Pilesgrove and the Borough of Woodstown (hereinafter called petitioners), filed a notice of objection to the preliminary equalization table promulgated by the Salem County Board of Taxation pursuant to *N. J. S. A.* 54:3–17. In their notice they objected to the *"aggregate assessed values* for the Township of Lower Alloways Creek as shown on the Preliminary Equalization Table, at $5,796,775" (emphasis added). In addition, petitioners objected "specifically" to the assessment of the property known as Artificial Island and surrounding areas, in that the assessment on Block 26, Lot 1–P, being land $16,650 and improvements of $684,800, or a total of $701,450, was grossly below true value. Petitioners then prayed that the county board of taxation "correct and revise its Equalization Table for the year 1971 by revising and increasing the aggregate assessed value for the taxing district Lower Alloways Creek Township."

The county board of taxation met on March 3, 1971 to consider the foregoing objection. Under date of March 22, 1971 the secretary of the county board of taxation sent a letter to Public Service and the attorneys for the several municipalities saying:

The Salem County Board of Taxation after listening to the facts presented at the hearing held on March 3, 1971 on the Preliminary Table for 1971 and after having visited the above site decided to raise the land assessment on the above property from $80.00 per acre to $1,250.00 per acre for the tax year 1971.

It is noted that the foregoing letter did not relate to all of the property owned by Public Service, but only to the assessment on the plant site land consisting of 210 acres. It purported to increase the assessment thereon from $80 to

---

[1] The County of Salem is no longer a party to this proceeding.

$1,250 an acre and to raise the total assessment on that land from $16,650 to $262,500. Since the remaining 490 acres of "buffer" zone was at that time assessed at $5 an acre, the total assessment of all the Public Service land was then $264,950. In any event, so far as appears, the letter is the only evidence of the board's action on March 22. No *judgment* as to the assessment of the Public Service property was entered.

If the said action of the county board of taxation on March 22, 1971 were to be legally effective[2] as an "assessment" of the property, said action would have increased the total assessment from $701,450 to $949,750.[3] No appeal from that action was taken by any party. However, prior to August 15, 1971 petitioners filed petitions of appeal with the Salem County Board of Taxation seeking to increase the assessment of the Public Service property. The appeals were grounded in *N. J. S. A.* 54:3–21 which permits such appeals by a taxing district "which may feel discriminated against * * * by the assessed valuation of property in another taxing district in the county * * *" — here the Public Service property in Lower Alloways Creek. Pursuant to those appeals the county board held a hearing and entered judgment increasing the assessment on the 490 acres in the buffer zone from $5 to $400 an acre, making the total assessment in the sum of $1,143,000. Petitioners were still not satisfied with that increase and appealed to the Division of Tax Appeals, praying that the assessment be further increased. Public Service did not appeal from the county board judgment, apparently being satisfied therewith.

---

[2]But, as will be demonstrated below, the action of the county board on March 22, 1971 did *not* legally constitute an "assessment" of the property.

[3]It is noted that the county board judgment of November 4, 1971, rendered in its appellate capacity, recites slightly different figures, *i. e.*, land $264,650, improvements $684,800, total $949,450.

In the Division, Public Service made a motion to dismiss petitioners' appeal to that body. The motion was granted. The rationale of the Division in its decision may be summarized as follows: (a) the county board, by its action of March 22, 1971, adjudicated the "assessment" on the Public Service property to be $949,750; (b) this action was appealable to the Division under *N. J. S. A.* 54:2–35; (c) since no appeal pursuant to that section was taken by petitioners, the "action" of the board of March 22, 1971 was *res judicata* and therefore immune to attack when petitioners filed their appeal to the county board pursuant to *N. J. S. A.* 54:3–21, and (d) petitioners were collaterally estopped by their failure to appeal from the action of the county board of March 22, 1971, and the judgment of that board on appeal increasing the assessment to $1,143,300 was a nullity.[4]

■ In our consideration of the decision below the issue comes down to this: did the county board's action of March 22, 1971 effectively adjudicate the "assessment" of the Public Service property? Assuming for the purpose of discussion that such action of the county board did constitute an "assessment," it was not — contrary to the decision of the Division below — appealable to the Division of Tax Appeals pursuant to *N. J. S. A.* 54:2–35. In *Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157 (1949), the statutory scheme was delineated as follows:

The right of appeal to the Division of Tax Appeals is purely statutory and the appellant is required to comply with all applicable statutory requirements. *R. S.* 54:4–35 requires an assessor to file

---

[4]As the Division said below, the judgment of the county board at $1,143,300 is unchallenged by Public Service and, said the Division, since Public Service "is content with the larger assessment, we are not moved to disturb it." Thus a judgment of the county board, which purportedly it had no power to render, according to Public Service's argument, is left undisturbed by it. A strange result when one considers the assessment *desideratum* of establishing true value.

his complete assessment list or duplicate on or before January 10th of the year following the assessing date. *R. S.* 54:4-46, 47 requires the County Board of Taxation to examine, revise and correct the assessor's tax list and duplicate, and by virtue of *R. S.* 54:4-55 it must certify to the tax collector the "corrected, revised and completed duplicate * * * on or before April 1st." [now May 1]. The assessments levied on the property in the assessor's duplicate are not complete until the County Board certifies the assessor's duplicate to the tax collector. *Middletown Township v. Ivins*, 102 *N. J. L.* 36 (*Sup. Ct.* 1925).

The section of the Tax Act, *R. S.* 54:3-21, permits a taxing district "which may feel discriminated against by the assessed valuation of property" to appeal to the County Board of Taxation on or before August 15th. But a municipality cannot determine if it is discriminated against until after the assessment is corrected, revised and completed because until then the amount of the assessment is unknown.

It can thus be seen that the purpose of requiring a County Board of Taxation to certify the completed duplicate on or before April 1st [*sic*] is to afford an appellant ample time to prepare and file a petition for appeal with the County Board of Taxation before August 15th, the time limited for filing appeals.

*R. S.* 54:2-39 authorizes an appellant, dissatisfied with the *judgment* of the County Board, to appeal to the Division of Tax Appeals. This all spells out the progressive theme of the Tax Act and it is clear there can be no appeal except from a *judgment* of the County Board. This is the obvious legislative policy as expressed in the statutes.

But it is contended by respondent that *R. S.* 54:2-35 gives to the taxing district the right to appeal a local assessment direct to the Division of Tax Appeals. This statute is a general provision while *R. S.* 54:3-21 and *R. S.* 54:2-39 are specific. The inclusion of section 54:2-35 in the Revision of 1937 was obviously not intended to modify the specific provisions of sections 54:3-21 and 54:2-39 relating to appeals such as we are here concerned with. We are satisfied this was the legislative intent, which must govern.

\* \* \* \* \*

The entire legislative scheme is to provide a review of assessment valuations, on appeal of either the taxpayer or taxing district, first in the County Board, and secondly in the State body. This was the holding of the former Supreme Court in *Kenilworth v. Board of Equalization*, 78 *N. J. L.* 302 (*Sup. Ct.* 1909), in which case the court was construing section 10 of the County Board Act of 1906. This section is the source of *R. S.* 54:2-35 which, as said, respondent contends gave it the right of appeal direct to the Division of Tax Appeals and upon which the court below relied.

There are two unreported former Supreme Court decisions, *Pusey and Jones Co. v. State Board* (*Sup. Ct.* 1921) and *Scott v. Board of*

*Equalization of Taxes (Sup. Ct.* 1913), which repudiate the possibility of a direct appeal to the Division of Tax Appeals without an intervening appeal first to the County Board.

If *R. S.* 54:2–35 gave the right of appeal direct to the Division of Tax Appeals then *R. S.* 54:3–21, a later enactment, is a useless piece of legislation, for if there is available to either a taxpayer or a taxing district such a direct review then either party could by-pass the County Board and destroy its function of exercising its appellate capacity and thus nullify the progressive theme of the Tax Act.

This leads us to the conclusion that the respondent township had no right of appeal direct to the Division of Tax Appeals; that this tribunal had only jurisdiction to review action by the County Board of Taxation sitting in its appellate capacity; * * *. [At 164–166]

Therefore, petitioners were not collaterally estopped from taking their appeal to the county board under *N. J. S. A.* 54:3–21.

As stated above, the foregoing is said only upon the assumption that the action of the county board on March 22 did constitute an adjudication of the "assessment." It did not, nor could it be such. The assessor's assessment list and his duplicate must be filed by the local assessor with the county board of taxation by January 10 of the assessment year. *N. J. S. A.* 54:4–35. But the assessment is not complete until the County Board certifies the assessor's duplicate to the Tax Collector. *Hackensack Water Co. v. Division of Tax Appeals, supra; Baldwin Construction Co. v. Essex County Board of Taxation,* 24 *N. J. Super.* 252 (Law Div. 1952), aff'd 27 *N. J. Super.* 240 (App. Div. 1953); *White House Hotel, Inc. v. Lakewood Tp.,* 53 *N. J. Super.* 532 (App. Div. 1959); *Maplewood Tp. v. Essex County Bd. of Taxation,* 39 *N. J. Super.* 202 (App. Div. 1956); *Gualano v. Bd. of Estimate of Elizabeth School Dist.,* 72 *N. J. Super.* 7 (Law Div. 1962); aff'd 39 *N. J.* 300 (1963). Such certification is done on or before May 1 (*N. J. S. A.* 54:4–55), after the county board has met to examine, revise and correct the lists (*N. J. S. A.* 54:4–46, 47). Since, therefore, the assessment for the year 1971 of the subject property was not yet complete when the action of March 22 was taken — and could not have been completed until certification of the

duplicate by the county board of taxation on April 10 — simple logic dictates that the action of the county board on March 22, 1971, did not constitute an "assessment" of the Public Service property.

In any event, when the county board of taxation met on March 3, 1971 to hear petitioners' claim that the ratables in the Township of Lower Alloways Creek were too low, and thus that that township would avoid its fair share of county taxes, the county board was acting in its "equalization" function pursuant to *N. J. S. A.* 54:3–17 and 18. In *Essex Cty. Park Comm'n v. Bd. of Chosen Freeholders*, 58 *N. J. Super.* 93 (App. Div. 1959), it was said:

> The sole and fundamental purpose of equalization is the equitable apportionment of the amount to be raised in the respective taxing districts for state, state school, county and free county library purposes, and for purposes of regional and consolidated school districts and school districts comprising two or more taxing districts.
>
> ✻ ✻ ✻ ✻ ✻
>
> The legislative purpose in enacting the equalization statutes was clearly to limit the use of the equalization table to apportionment situations. As the Law Division judge observed, the present case is not one of apportionment. Apportionment of the tax burden takes place only after the total amount of revenue that must be raised by the county has been determined. Then, and only then, is the tax burden apportioned among the several taxing districts according to the equalization table. [At 102]

In that case, since no problem of apportionment of tax burden was there involved, the court rejected the equalization table adopted by the county tax board as a measure for determining the amount which could be spent for maintenance of the county park system. So here. The "assessment" of the Public Service property does not involve "apportionment," and the action of the county board in its equalization function on March 22, 1971 is irrelevant to that assessment. Thus in *Passaic v. Passaic Cty. Bd. of Taxation*, 18 *N. J.* 371 (1955), it was said (at 380) with respect to the action of the county board in exercising its equalization function: "✻ ✻ ✻the increase or decrease of an aggregate of real

estate assessments *does not result in the change of any individual real estate assessment included in it.*" (Emphasis added). And more recently it was said in *Willingboro Tp. v. Burlington Cty. Bd. of Taxation,* 62 *N. J.* 203:

> The stated equalization function of the county boards does not in any way affect individual tax assessments against property owners. Those are required to be separately revised and corrected administratively by the county boards after receipt of the lists from the local assessors (*N. J. S. A.* 54:4–46, 47), and are subject to further revision and correction on appeal to the county boards and the State Division of Tax Appeals. [At 208]

See also *Totowa v. Passaic Cty. Bd. of Taxation,* 5 *N. J.* 454 (1950).

Public Service also contends that petitioners "may not contest the fair value of an individual assessment in another taxing district once the equalization table has become final." Thus it is said petitioners had no right to appeal to the county board under *N. J. S. A.* 54:3–21. No authority is cited for that proposition, but the reasoning projected in support is that since the county taxes had already been apportioned in the equalization process, petitioners had nothing to gain in the event that their appeals were to result in increasing the assessment of the subject property. That does not necessarily follow. Presumably any such increase will be reflected in the equalization tables for the following and subsequent years, with resultant decrease in petitioners' share of county taxes and other costs dependent on such tables. If not so reflected, petitioners have the right to challenge the tables. *N. J. S. A.* 54:2–37 and 35. In any event, to adopt Public Service's reasoning would be to nullify the plain language of *N. J. S. A.* 54:3–21 which clearly authorizes the filing of appeal *up to August* 15 by a taxing district which may feel discriminated against "by the assessed valuation of property in another taxing district." Thus, such a taxing district is permitted to file such appeals more than five months after the equalization process

has been completed by the statutory date of March 10. *N. J. S. A.* 54:3–18.

We therefore hold that the action of the county board in its equalization capacity of March 22, 1973 was not an adjudication of the "assessment" of the Public Service property and was not *res judicata* as to the assessment. To regard its action as such would be a complete distortion of the orderly functions of assessment and review as laid down by our tax statutes. It follows that the decision of the Division in dismissing petitioners' appeals for the year 1971 must be reversed. The matter is remanded to the Division for prosecution and hearing of said appeals seeking an increase of the assessment above the $1,143,300 fixed by the county board in its judgment on November 4, 1971.

We do not retain jurisdiction.