730 A.2d 287

PETER CASAMASINO, PLAINTIFF–RESPONDENT AND CROSS–APPELLANT, AND DIRECTOR, DIVISION OF TAXATION AND HUDSON COUNTY BOARD OF TAXATION, PLAINTIFFS–INTERVENORS, v. CITY OF JERSEY CITY AND BRET SCHUNDLER, MAYOR OF THE CITY OF JERSEY CITY, DEFENDANTS–APPELLANTS AND CROSS–RESPONDENTS.

Argued October 13, 1998—Decided May 27, 1999.

334

336 

*Brian W. McAlindin* argued the cause for appellant and cross-respondent Bret Schundler, Mayor of the City of Jersey City (*Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys; *Mr. McAlindin, Colin P. Hackett* and *Kenneth R. Foreman,* on the briefs).

*Martin R. Pachman* argued the cause for appellant and cross-respondent City of Jersey City (*Sean M. Connelly,* Corporation Counsel, attorney; *Mr. Connelly,* on the brief).

*Harry Z. Haushalter* argued the cause for respondent and cross-appellant.

*John R. Lloyd* argued the cause for *amicus curiae,* The Association of Municipal Assessors of New Jersey (*Rosenblum Wolf & Lloyd,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

This case raises fundamental questions implicating the respective powers and responsibilities of the executive and legislative branches of municipal government regarding the appointment, confirmation, and tenure of a tax assessor. The specific issue is whether an individual appointed by a mayor, without the "advice and consent" of the municipal council as required by statute, to fill an unexpired term of sixty-four days to be followed by a four-year full term as tax assessor, acquires tenure after serving for six years in that capacity.

█ The trial court found that the City Council impliedly ratified plaintiff's appointment for four years and sixty-four days by its complacency after being informed of plaintiff's appointment. The trial court also found that the municipality's failure to terminate or reappoint plaintiff upon completion of his first four-year term conferred tenure. The Appellate Division affirmed in a published opinion. 304 N.J.Super. 226, 699 A.2d 697 (1997). We granted certification, 156 N.J. 383, 718 A.2d 1212 (1998), and now reverse. We hold that a tax assessor cannot acquire tenure without undergoing the statutory reappointment process.

I

For some time prior to April 28, 1987, plaintiff Peter Casamasino had been employed by Jersey City as its assistant tax assessor. When the tax assessor, Margaret Jeffers, died while in office, Mayor Anthony Cucci in a letter dated April 27, 1987, appointed plaintiff "as the Tax Assessor to complete the term of office of the late Margaret Jeffers expiring on June 30, 1987. Upon expiration of said term, I hereby appoint Mr. Casamasino to a full four-year term commencing July 1, 1987 and expiring June 30, 1991." Plaintiff signed his oath of office on April 28, 1987, and his salary was increased immediately from $38,150 as assistant tax assessor to $65,000 as tax assessor. Although the mayor's letter of appointment was addressed to both the president and other mem-

bers of the City Council, the Council never formally approved the appointment.

Plaintiff completed his first full term as tax assessor on June 30, 1991. At that time, then Mayor Gerald McCann took no action to reappoint plaintiff. Plaintiff took no affirmative steps to seek reappointment even though he was advised to do so by Joanne Monahan, then Acting Corporation Counsel. For the next two years, plaintiff continued to perform the duties of tax assessor, and the City of Jersey City continued to pay his salary.

Mayor McCann forfeited his office in the spring of 1992 due to a federal conviction. Brett Schundler was elected to fill McCann's unexpired mayoral term in November 1992. In May 1993, Mayor Schundler was re-elected to a new four-year term. Shortly after the election, Mayor Schundler notified plaintiff on June 30, 1993, that he was exercising his "mayoral prerogative not to reappoint [plaintiff] as assessor. Effective herewith, you are relieved of your duties."

The following day, July 1, 1993, plaintiff filed a complaint in lieu of prerogative writs against the City of Jersey City and Mayor Schundler seeking reinstatement as tax assessor. In addition, the complaint as amended charged defendants with violations of plaintiff's federal civil rights under 42 *U.S.C.* § 1983, violations of the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19–1 to –8, violations of the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, wrongful termination from employment, defamation, intentional infliction of physical and emotional harm, and intentional interference with a business relationship.

On July 7, 1993, plaintiff obtained an order directing defendants to show cause why plaintiff's removal should not be vacated. The order to show cause also included a temporary restraining order that preserved plaintiff's status as tax assessor pending the return date of the order.

On July 30, 1993, at the conclusion of the hearing on the order to show cause, the court found that plaintiff had been appointed by

Mayor Cucci to the office of tax assessor for a four-year term commencing on July 1, 1987, and ending June 30, 1991. The court found that the City Council had consented to that initial appointment through its silence and acquiescence. The trial court further determined that plaintiff's continuation of service after June 30, 1991, coupled with the continued silence and acquiescence of the Mayor and City Council, was essentially a reappointment to the position, thus giving rise to tenure under *N.J.S.A.* 54:1–35.31. The remaining claims were dismissed on summary judgment motions.

Defendants appealed and plaintiff cross-appealed. Defendants argued essentially that the trial court had "usurped 'the discretionary executive and legislative functions of the mayor and city council' by reinstating plaintiff as tax assessor and granting him tenure." *Casamasino, supra,* 304 *N.J.Super.* at 233–34, 699 *A.*2d 697. Citing the need for tax assessors to be insulated from municipal interference and political pressure, the Appellate Division affirmed the trial court's decision that accorded tenure to plaintiff. *Id.* at 234, 699 *A.*2d 697.

On the cross-appeal, plaintiff contended that the trial court had improperly dismissed his § 1983, LAD, CEPA, defamation, and punitive damage claims. The Appellate Division affirmed the dismissal of those claims as well. *Id.* at 240–46, 699 *A.*2d 697. We granted both parties' petitions for certification. 156 *N.J.* 383, 718 *A.*2d 1212 (1998).

II

-A-

First, we address Mayor Schundler's and the City Council's argument that because the City Council was never requested to confirm plaintiff's nomination as tax assessor, he never legally became tax assessor and therefore could not acquire tenure. Plaintiff maintains that the City Council, by allowing him to stay in office after his first "appointment" and then continue in office following the lapse of a four-year term, ratified his status as tax

assessor. Plaintiff argues that to permit Jersey City to create an at-will employment arrangement with its assessor by simply failing to appoint or reappoint the assessor, would contravene the statutory scheme established to secure the independence and integrity of the office of tax assessor. In the alternative, plaintiff argues that even if he did not acquire tenure, he was fired in the middle of a four-year term that he was entitled to complete. Amicus Curiae Association of Municipal Assessors of New Jersey agrees with plaintiff that the City Council impliedly ratified plaintiff's "appointment" and that he acquired tenure.

Mayor Schundler further contends that the lower courts usurped the functions of both the executive and legislative branches by issuing an unconstitutional writ of mandamus. He maintains that the court's mandamus authority does not permit it to enforce a municipality's discretionary decisions, one of which is the appointment of a tax assessor.

-B-

To answer the arguments advanced by the parties, we must examine the form of municipal government under which Jersey City operates, the statutory scheme that controls the appointment and term of a tax assessor, and our constitutional separation of powers doctrine.

The City of Jersey City adopted the mayor-council plan of government pursuant to the Faulkner Act, *N.J.S.A.* 40:69A–26 to–210. In view of that governmental plan, we must decide whether, when weighed against the constitutional separation of powers doctrine, a tax assessor in a Faulkner Act municipality can acquire tenure without active compliance with the statutory requirements.

The Faulkner Act was created with the intent to confer upon municipalities the greatest possible power of local self-government consistent with the Constitution of this State and the applicable law as set forth in *N.J.S.A.* 40:69A–28. *N.J.S.A.* 40:69A–30; *Myers v. Cedar Grove Tp.*, 36 *N.J.* 51, 57, 174 *A*.2d 890 (1961); *Keuerleber v. Township of Pemberton*, 260 *N.J.Super.* 541, 544,

617 *A*.2d 277 (App.Div.1992). Municipalities that adopted one of the Faulkner Act plans have been granted wide authority to determine the organization of departments and to control personnel. *Ibid.* The mayor-council plan of government is governed by the general law and pertinent provisions of the Faulkner Act.

In a Faulkner Act municipality that has adopted the mayor-council plan of government such as Jersey City, "[t]he mayor shall, with the advice and consent of the council, appoint the municipal [tax] assessor." *N.J.S.A.* 40:69A–43(b). "Every municipal tax assessor . . . shall hold his office for a term of 4 years from the first day of July next following his appointment." *N.J.S.A.* 40A:9–148. If a vacancy occurs during the tax assessor's four-year term, a successor shall be appointed to fill the unexpired term. *Ibid.* Pertinent to this case, a tax assessor may acquire tenure provided that he or she has been reappointed "subsequent to having received a tax assessor certificate and having served as tax assessor or performed the duties of assessor for not less than 4 consecutive years immediately prior to such reappointment." *N.J.S.A.* 54:1–35.31(1).

 Although the separation of powers doctrine applied to federal and state governments is not generally applicable to mayor-council plan of government, "the Faulkner Act plainly envisages some separation of functions between the Council (the legislative body) and the Mayor (the executive)." *In re Shain,* 92 *N.J.* 524, 537, 457 *A*.2d 828 (1983). That separation of functions imposes "certain limits on the Mayor and local council in governing the municipality." *Id.* at 538, 457 *A*.2d 828. Principles of separation of powers are applicable where the Legislature has specifically delegated to the mayor and to the council separate functions in the appointment of officials such as tax assessors. Where one branch of government has been specifically vested with the authority to act in a prescribed manner, neither of the other branches may usurp that authority. *N.J.S.A.* 40:69A–32(b); *Communications Workers v. Florio,* 130 *N.J.* 439, 463–64, 617 *A*.2d 223 (1992); *David v. Vesta Co.,* 45 *N.J.* 301, 326, 212 *A*.2d 345 (1965).

Here, only the mayor was involved in plaintiff's appointment. *N.J.S.A.* 40:69A–43(b) requires both the mayor representing the executive branch, and the council representing the legislative branch, to perform separate roles in the appointment and reappointment of a tax assessor. Neither can ignore the responsibility of the other in the appointment and confirmation of tax assessors without violating separation of powers principles. Requiring approval of tax assessors by two branches of municipal government is not only mandated by statute, but it is also consistent with the important services provided by tax assessors.

■ Municipal tax assessors serve both local and state governmental needs. Thus, a municipal tax assessor is a hybrid because he or she is subject to the control of both the municipality and the State. *Mitchell v. City of Somers Point,* 281 *N.J.Super.* 492, 499, 658 *A.*2d 1276 (App.Div.1994); *Jeffers v. City of Jersey City,* 8 *N.J.Tax,* 313, 316–17 (Law Div.1986), *aff'd,* 214 *N.J.Super.* 584, 520 *A.*2d 797 (App.Div.1987); *Horner v. Ocean Tp. Comm.,* 175 *N.J.Super.* 533, 537, 420 *A.*2d 1033 (App.Div.1980). Although a tax assessor is generally appointed by a municipality, *N.J.S.A.* 40A:9–146, and his or her jurisdiction is local, the powers and duties of that office are specifically prescribed by the Legislature. A tax assessor's basic obligation is to "determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract." *N.J.S.A.* 54:4–23. The assessor is subject to state controls that include investigation by the Director of the Division of Taxation concerning his methods. *N.J.S.A.* 54:1–26 and –19; *Horner, supra,* 175 *N.J.Super.* at 538, 420 *A.*2d 1033.

-C-

First, we address plaintiff's contention that although his appointment by the mayor for a full four-year term running from July 1, 1987 to June 30, 1991, was not formally voted on by the City Council, his appointment was nonetheless ratified by it. We

look to our decisional law to determine whether that procedural irregularity can legally be cured by the doctrine of ratification.

 Ratification is equivalent to an original exercise of power that relates back to the date of the original act or appointment being ratified. *Edgewater Park v. Edgewater Park Housing Authority,* 187 *N.J.Super.* 588, 455 *A.*2d 575 (Law Div.1982), held that a public agency may ratify premature contracting with an attorney for professional services, "provided the ratification proceedings occur after there has been compliance with the Municipal Land Use Law [*N.J.S.A.* 40:55D–31] and the Local Public Contracts Law [*N.J.S.A.* 40A:11–5(1)(a)(i) and –5]," *id.* at 602, 455 *A.*2d 575, and all statutory conditions precedent. There, the failure to comply with those statutory requirements made the contract for services an irregular exercise of the power to enter into the contract.

 Similarly, the subsequent passage of an "ordinance directing payment of a just claim previously incurred by a municipality constitutes effective ratification to bind the municipality as though the obligation had been first properly authorized." *De Muro v. Martini,* 1 *N.J.* 516, 522, 64 *A.*2d 351 (1949). Two years later, this Court reaffirmed the principle that a contract formed without compliance with statutory conditions precedent may not be validated simply by performance. *Bauer v. City of Newark,* 7 *N.J.* 426, 434, 81 *A.*2d 727 (1951). A contract that did not comply with all statutory conditions precedent can be "ratified only by full compliance with the statutory prerequisites ... in the first instance." *Id.* at 435, 81 *A.*2d 727. The pertinent principle derived from the foregoing cases that is applicable to the present case is that ratification of irregular contracts for goods or services is permitted only after full compliance with all statutory conditions precedent. That essentially means express, rather than implied, ratification.

But implied ratification of irregular contracts by municipalities has also been recognized. *Johnson v. Hospital Service Plan of New Jersey,* 25 *N.J.* 134, 140–41, 135 *A.*2d 483 (1957), held that the

doctrine of implied ratification applies to individuals and municipalities when there is sufficient evidence "to affirm the unauthorized act of [the municipality's] agent." *Ibid. Johnson,* however, is not a case in which "the parties failed to comply with any mandatory statutory requirements operating as conditions precedent to the formalities of a valid contract." *Id.* at 139, 135 *A.*2d 483.

The analysis of ratification of employment relations has paralleled the analysis of contract ratification. *Cetrulo v. Byrne,* 31 *N.J.* 320, 330, 157 *A.*2d 297 (1960), held that although the Essex County Board of Chosen Freeholders had usurped the Essex County Prosecutor's authority to appoint legal assistant prosecutors, Prosecutor Byrne's predecessor in office may have ratified such an appointment by allowing the person to serve in that capacity under him for three years. *Ibid.* Prosecutor Byrne terminated the legal assistant the first day he began his tenure. Cetrulo claimed that he should have been considered " 'as a *de facto* position holder or employee of the County of Essex.' " *Ibid.* That claim was rejected because an appointment to that position is personal to each prosecutor and because the Legislature intended to exclude a county prosecutor's confidential employees such as legal assistants from acquiring tenure under the Veteran's Tenure Act, *N.J.S.A.* 38:16–1. *Ibid.*

*Barkus v. Sadloch,* 20 *N.J.* 551, 120 *A.*2d 465 (1956), concerned a switchboard operator who was hired by the mayor when only the governing body had the statutory authority to hire her. When her employment was abruptly terminated by resolution of the governing body, she sued, claiming tenure under the Veteran's Tenure Act. The Court held that Barkus's appointment was ratified by the City Council because "[p]laintiff performed [her] duties for a period of over two years in the conspicuous surroundings of the City Hall. Her name appeared on every payroll approved by resolution of the city council during" the period of October 21, 1952 to January 15, 1954. *Id.* at 556, 120 *A.*2d 465. The Court also held that her status as a *de facto* employee for an indefinite

term brought her within the protection of the Veteran's Tenure Act. *Id.* at 557, 120 *A.*2d 465.

*Ream v. Kuhlman,* 112 *N.J.Super.* 175, 194, 270 *A.*2d 712 (App.Div.1970), involved an attempt to appoint a tax assessor to less than a full four-year term. It held that any attempt to appoint a tax assessor to a full term of less than four years results in a four-year term based on the plain language in *N.J.S.A.* 40:46–6.2, the predecessor to *N.J.S.A.* 40A:9–148.

More recently, the Appellate Division in *Grimes v. City of East Orange,* 288 *N.J.Super.* 275, 672 *A.*2d 239 (App.Div.1996), adopted the correct legal analysis for determining whether an improper appointment of a public official is capable of subsequent ratification by the appropriate appointing authority and whether that person can be considered a *de facto* officer. First, the *Bauer* test must be applied to decide whether the act or appointment was *ultra vires* or *intra vires.* An act or appointment is *ultra vires* if the "municipality [was] utterly without capacity" to perform the act or make the appointment. *Bauer, supra,* 7 *N.J.* at 434, 81 *A.*2d 727. Such an act or appointment is void and may not be ratified. *Ibid.* In contrast, an *intra vires* act or appointment is one that is "voidable for want of authority" and may be ratified. *Ibid.; Grimes, supra,* 288 *N.J.Super.* at 279, 672 *A.*2d 239. This general rule has been recognized throughout the country. *See* McQuillin, *Municipal Corporations* § 12.175.10 at 19 (3d ed.1991). Second, *Grimes* requires that when the act or appointment involves statutory conditions precedent, ratification *must* be made with the same formalities required for the original exercise of power, meaning in accordance with the statutory procedures required for the original act. *Grimes, supra,* 288 *N.J.Super.* at 280, 672 *A.*2d 239 (citing *McQuillin, supra,* § 13.47 at 879).

Applying the above principles to the present case, we conclude that Casamasino's appointment as tax assessor for the four-year term that covered the period of July 1, 1987 to June 30, 1991, was made by the mayor who was the statutorily designated appointing authority, subject to confirmation by the City Council. *N.J.S.A.*

40:69A–43(b); *N.J.S.A.* 40A:9–146. Because the appointment was made by the proper appointing authority, at least the first half of the statutory appointment process was satisfied. In view of that fact, the focus now shifts to a consideration of the more problematic question of whether the appointment was capable of ratification by the City Council absent a formal confirmation vote.

We are satisfied that under the decisional law of this State, ratification by the City Council of a tax assessor can occur only after council members have full knowledge of all the material facts, including the knowledge that it is ratifying the appointment of a tax assessor for a particular term as a cure for its usual confirmation process. Such a ratification requires an open, unequivocal act intended as a substitute for a formal resolution of the council approving the mayor's appointment within the meaning of *N.J.S.A.* 40:81–20. That did not occur in the present case. Mayor Cucci's letter of appointment was addressed to the City Council and copies were sent to the City Clerk and the Law Department. The letter can reasonably be understood as requesting the City Council to place the matter on the agenda for a vote when the mayor wrote: "Thank you for your attention to this matter." In addition, Councilman Hart wrote a congratulatory letter to plaintiff in the spring of 1987. None of that, however, represents any action taken by the City Council.

Although the record is reasonably clear that the City Council was aware that plaintiff had been chosen as the tax assessor by Mayor Cucci, and that plaintiff assumed those responsibilities on April 28, 1987, there is no evidence that the City Council ever listed the appointment on its agenda for "advice and consent" as contemplated by *N.J.S.A.* 40:69A–43(b) and *N.J.S.A.* 40:81–20. Not only was there no formal action taken by the City Council to confirm the appointment, there is no evidence that the City Council ever acknowledged plaintiff in a formal meeting that arguably could be equivalent to confirmation. *N.J.S.A.* 40:69A–43(b) requires more than mere silence, acquiescence, or payment of salary by the City Council before ratification can be said to

have occurred. Viewing the evidence in a light most favorable to plaintiff, all that can be said is that the City Council knew plaintiff had been appointed by Mayor Cucci. It took no action that was similar to or equivalent to the advice and consent contemplated by the controlling statute.

The appointment, reappointment, and tenure acquisition process for tax assessors under *N.J.S.A.* 40:69A–43(b) and *N.J.S.A.* 54:1–35.31(1) is similar to that required for Supreme Court justices and judges of the Superior Court under Article Six of the New Jersey Constitution. A justice or judge must be nominated and appointed by the Governor "with the advice and consent of the Senate." *N.J. Const.* art. 6, § VI, ¶ 1. If confirmed, the appointment is for a fixed term of seven years. *Id.* at ¶ 3. Upon completion of the first seven-year term, a justice or judge may be reappointed in the same manner as the initial appointment. *Ibid.* Upon reappointment, a justice or judge acquires tenure "during good behavior," or until the mandatory retirement age of seventy. *Ibid.*

The constitutional requirement that the Governor nominate and appoint justices and judges with the advice and consent of the Senate, and the statutory requirement that the mayor appoint tax assessors with the advice and consent of municipal council, at the very least, contemplate that the nomination or appointment will not proceed without the advice and consent of the Senate or the municipal council respectively. *De Vesa v. Dorsey,* 134 *N.J.* 420, 433, 634 *A.*2d 493 (1993) (Pollock, J. concurring). The one difference between judicial appointments and reappointments and those for tax assessors is that without Senate action on judicial nominees, the nomination lapses, *ibid.,* while a tax assessor may become a *de facto* officer under some circumstances.

### III

Having found that plaintiff's appointment by Mayor Cucci was defective, we must resolve his status between July 1, 1987 and June 30, 1991, the period Mayor Cucci designated as a full four-year term. The answer lies in the *de facto* officer doctrine.

 The doctrine dates back to 1431. *In re Fichner,* 144 *N.J.* 459, 468, 677 *A.*2d 201 (1996); Kathryn A. Clokey, Note, *The De Facto Officer Doctrine: The Case for Continued Application,* 85 *Colum. L. Rev.* 1121, 1125 (1985). We have described the doctrine as follows:

> The essence of the *de facto* officer doctrine is that one who claims to be a public officer while in possession of an office and ostensibly exercising its function lawfully and with the acquiescence of the public is a *de facto* officer whose lawful acts, so far as the rights of others are concerned, are, if done within the scope and by the apparent authority of the office, as valid and as binding as if the officer were legally qualified for the office and in full possession of it.
>
> [*Fichner, supra,* 144 *N.J.* at 468, 677 *A.*2d 201 (citations omitted).]

The ancient doctrine has been part of our common law for more than a century, *Erwin v. Jersey City,* 60 *N.J.L.* 141, 144, 37 *A.* 732 (E. & A. 1897), and part of our statutory law since 1925. *L.* 1925, c. 239, § 1, now codified at *N.J.S.A.* 40A:9-6. Ancient though the doctrine may be, it nevertheless serves the needs of our contemporary society. *Fichner, supra,* 144 *N.J.* at 468, 677 *A.*2d 201. Because the statute does not define "*de facto* officers," we apply the common law definition rearticulated in *Fichner, supra,* 144 *N.J.* at 468-67, 677 *A.*2d 201. Thus, it is clear that the duties performed by plaintiff while serving as *de facto* tax assessor are binding on the municipality and third parties. To hold otherwise would create substantial uncertainty by permitting challenges to official actions based on plaintiff's lack of confirmation by the City Council.

 The remaining question regarding the *de facto* officer doctrine is whether plaintiff's good-faith performance of his duties as tax assessor entitles him to more than compensation for services rendered. The statute provides that a *de facto* officer who has performed the duties of that office "shall be entitled to the emoluments and compensation appropriate to such office or position for the time in fact so held." *N.J.S.A.* 40A:9-6. The term "emolument" means "[t]he profit arising from office or employment; that which is received as a compensation for services, or which is annexed to the possession of office as salary, fees, and perquisites; advantage; gain, public or private."

*Black's Law Dictionary* 616 (4th ed.1968). Plaintiff was paid the full salary designated for tax assessors the entire six years. We conclude that tenure is not an emolument of a *de facto* office holder. We also conclude that presently, a *de facto* tax assessor occupies that position until terminated, or until a successor is appointed, whichever occurs first. The latter conclusion is consistent with the holding in *Barkus, supra,* 20 *N.J.* at 557, 120 *A.*2d 465, and with *McQuillin, supra,* § 12.105 at 513 (stating the "rights of a holdover officer terminate when the rights of the successor vest"). Because plaintiff was a *de facto* tax assessor, Mayor Schundler was free to terminate him.

 Apart from the fact that under the *de facto* officer doctrine plaintiff was not entitled to tenure under *N.J.S.A.* 40A:9–6, the statutory preconditions for tenure simply were not met. A tax assessor can acquire tenure only if two preconditions · are satisfied. First, the person must have been appointed by the mayor with the advice and consent of the council for a four-year term that commences on the first day of July next following the appointment. *N.J.S.A.* 40A:9–148. Second, the person must be reappointed by the mayor with the advice and consent of the council after receiving a tax assessor certificate and after "having served as tax assessor or performed the duties of assessor for not less than 4 consecutive years immediately prior to such reappointment." *N.J.S.A.* 54:1–35.31(1). Plainly, there was no reappointment of plaintiff. Just as a municipality cannot change the statutorily prescribed four-year term of office for tax assessors, neither can a municipality or the judiciary change the statutorily prescribed requirement for granting tenure. Unless the full statutory procedure is satisfied, tenure cannot be conferred based solely on the fact that plaintiff performed the duties of a *de facto* tax assessor for six years. *See Cutler v. Borough of Westwood,* 295 *N.J.Super.* 344, 347, 685 *A.*2d 44 (App.Div.1996), *certif. denied,* 149 *N.J.* 143, 693 *A.*2d 112 (1997) (stating that tenure should not be conferred based upon a technicality).

Unlike some other public positions that have fixed terms and yet permit holdover status based on the organic law, *see, e.g., N.J.S.A.* 26:1A–109 (permitting members of the Commission on Aging to hold over until their successors are appointed and qualified); *N.J.S.A.* 32:2–4 (permitting commissioners of the Port Authority to hold over until a successor is appointed and qualified); *N.J.S.A.* 32:3–3 (permitting commissioners of the Delaware River Port Authority Joint Commission to hold over until their successors are appointed and qualified); and *N.J.S.A.* 54:3–3 (permitting members of county boards of taxation to hold over until their successors are appointed and qualified); tax assessors, justices and judges are not granted any holdover status under the organic law outlining their appointments and reappointments.

For a short time only, the Legislature recognized a limited-holdover status for tax assessors. During a period beginning in July, 1971, when tax assessors could be either elected or appointed, vacancies that occurred before completion of a full term were "filled by appointment for the unexpired term or until the election and qualification of a successor." *L.* 1971, *c.* 200, amending *N.J.S.A.* 40A:9–148. When elections were eliminated as a method of selecting tax assessors in 1978 and appointments by the governing body or chief executive became the only option, the limited holdover provision for tax assessors appointed to fill an unexpired term was eliminated. *L.* 1978, *c.* 128, § 2, amending *N.J.S.A.* 40A:9–148, effective July 1, 1979. This very limited holdover status that existed for less than ten years strongly suggests that the Legislature did not intend tax assessors to become holdovers after 1979, which was over eight years before plaintiff was appointed in 1987.

The constitutional provisions regarding appointments and reappointments of justices and judges, like the statutes that collectively establish the procedure for appointing and confirming nominations or appointments for tax assessors, do not specify a period of time in which the process must be concluded. Under our holding today that applies the *de facto* officer doctrine to a tax assessor

where the advice and consent requirements have not been satisfied, the possibility exists that a *de facto* tax assessor may remain in office longer than if he or she had become a *de jure* assessor. Plaintiff is such an example. The *de facto* officers doctrine and *N.J.S.A.* 40A:9-6 are rooted in our public policy of protecting the public's interest. We must now guard against permitting the beneficial doctrine to be used for mischievous purposes.

For the future, we have placed some prospective limitations on the use of *de facto* tax assessors. Consistent with the statutory scheme and in the interest of minimizing potential abuses in the future, *de facto* officer status will be available only to those tax assessors who have been appointed with the advice and consent of the council. They can become *de facto* officers only in the face of minor omissions such as failing to take the oath of office. We also hold that there can be no holdover at the end of a term because none is provided for in the controlling statutes. As we have noted earlier, the Legislature knows how to create temporary or holdover appointments when it chooses to do so. The absence of such a provision in the tax assessor area indicates the Legislature's intention not to permit tax assessors to serve as holdovers. To acquire tenure, there cannot be any break in service between the initial appointment and reappointment. Absent a statutory holdover provision, tax assessors, like justices and judges, who have not been reappointed and confirmed by the last day of their first full term must vacate the office.

We do not envision that these prospective limitations on *de facto* tax assessors will cause any hardship to municipalities. If the incumbent assessor is not reappointed and confirmed before being required to leave office, the municipality would be without an assessor for a maximum of ninety days. On October 1 of any year in which a municipality is without a tax assessor, the Governor is obligated to notify "the mayor or other chief executive of the governing body that within 10 days after service of said notice [the Governor] will appoint an assessor." *N.J.S.A.* 40A:9-149. Furthermore, we are confident that the need for revenue derived

■■■■■■■■■■■■■■■■■■■■

annually from real property taxes will provide an incentive to make timely appointments of tax assessors.

## IV

■■ We also reject plaintiff's contention that he is entitled to tenure as tax assessor based on the doctrine of estoppel. Estoppel is "an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." *State v. Kouvatas,* 292 *N.J.Super.* 417, 425, 678 *A.*2d 1178 (App.Div.1996). Although the doctrine of equitable estoppel is rarely invoked against a governmental entity, this Court has long held that the prevention of manifest injustice provides an exception to the general rule. *County of Morris v. Fauver,* 153 *N.J.* 80, 104, 707 *A.*2d 958 (1998); *Vogt v. Borough of Belmar,* 14 *N.J.* 195, 205, 101 *A.*2d 849 (1954). This case does not involve any of the principles essential to invoking the doctrine.

## V

■■■ For the future, it is critical to understand the limitations of our holdings. Henceforth, *de facto* officer status shall be limited to those tax assessors who have been appointed by the mayor with the advice and consent of the council. We conclude that in the future only express ratification will suffice to cure a lack of advice and consent. We have considered implied ratification on an interim basis only, but the proofs in this case failed to satisfy the required standard. Rarely then will a tax assessor be able successfully to acquire the status of a *de facto* officer. That status will be confined to such instances, by way of examples only, in which the assessor failed to take the oath of office or where he or she mistakenly continued in office after the expiration of a full term. Except in very limited instances, no form of holdover status is permitted. Unless reappointed in accordance with the controlling statutes before the full term expires, the position of tax

assessor ends definitively and irrevocably on the last day of the term.

The judgment of the Appellate Division is reversed.

O'HERN, J., concurring.

I concur in the opinion and judgment of the Court, except insofar as the opinion suggests that the initial appointment could not have been ratified. The trial court determined that the Jersey City Council impliedly ratified Casamasino's 1987 appointment by its silence because "plaintiff occupied his office in an open and notorious manner," and "one could not conclude otherwise but that the Council had full knowledge of the fact that plaintiff was functioning in every respect as the tax assessor."

> There is decisional support for the theory that the conduct of the township managers constituted an approbation of [Casamasino's] status as tax assessor so as to validate his appointment. See *Barkus v. Sadloch*, 20 *N.J.* 551, 120 *A.2d* 465 (1956), where [the] Court held that the inappropriate appointment of a city employee was subsequently validated by council's acts in approving payrolls upon which the employee's name appeared. In this vein, see also *Cetrulo v. Byrne*, 31 *N.J.* 320, 330, 157 *A.2d* 297 (1960), and *Kovalycsik v. Garfield*, 58 *N.J.Super.* 229, 239, 156 *A.2d* 31 (App.Div.1959).
>
> [*Ream v. Kuhlman*, 112 *N.J.Super.* 175, 193, 270 *A.2d* 712 (App.Div.1970).]

However, I do not believe that tenure as tax assessor may be acquired as a holdover. There having been no reappointment by the new mayor when Casamasino's original term expired in 1991, the qualifications for achieving tenure under *N.J.S.A.* 54:1–35.31 were not met.

STEIN, J., dissenting.

In this appeal, as in *Kaman v. Montague Township Committee*, 158 *N.J.* 371, 730 *A.2d* 309 (1999), also decided today, a municipal tax assessor in political disfavor with the governing body of the municipality was removed from office on the basis that his status as a "holdover" tax assessor, who was neither reappointed nor replaced after the expiration of his four-year statutory term, rendered him removable at will. In both cases, the Court upholds the municipality's removal of the assessor. I believe that the

Court's dispositions frustrate the Legislature's clearly articulated objective, evidenced by a fixed statutory four-year term for assessors that does not authorize holdover status, *N.J.S.A.* 40A:9–148, to protect tax assessors from politically-inspired removal. The appropriate disposition, in my view, is to set aside the municipality's removal of the assessor, reinstate him, and permit him to serve out the balance of his statutory term.

## I

The critical facts are essentially undisputed. In 1987, when the duly appointed tax assessor died, plaintiff Peter Casamasino was employed by Jersey City as an assistant tax assessor. In a letter dated April 27, 1987, addressed to the president and the members of the City Council, Mayor Cucci appointed plaintiff "as the Tax Assessor to complete the term of office of the late Margaret Jeffers expiring on June 30, 1987. Upon expiration of said term, I hereby appoint Mr. Casamasino to a full four-year term commencing July 1, 1987 and expiring June 30, 1991."

Jersey City was a Faulkner Act municipality that had adopted the mayor-council form of government. Accordingly, the Mayor's appointment of Casamasino as tax assessor required the advice and consent of the council. *See N.J.S.A.* 40:69A–43(b). Ignoring the statute, the City Council of Jersey City never took action concerning the Mayor's appointment of Casamasino as tax assessor.

Pursuant to the Mayor's letter appointing him tax assessor, Casamasino signed his oath of office on April 28, 1987. His salary was immediately increased from $38,150 annually as assistant tax assessor to $65,000 as assessor. He proceeded to discharge the duties of the office until June 30, 1987, the last day of Ms. Jeffers' term, and continued in office for the full four-year statutory term commencing July 1, 1987 to which he had been "appointed" pursuant to Mayor Cucci's letter. See *N.J.S.A.* 40A:9–148 (providing that "[e]very municipal tax assessor ... shall hold his office for a term of 4 years from the first day of July next following his appointment."). The record before us does not reflect any chal-

lenge to Casamasino's exercise of the powers of his office during that period despite the City Council's failure to act on his appointment.

At the completion of plaintiff's initial four-year term as assessor on June 30, 1991, the then mayor Gerald McCann took no action to reappoint plaintiff, and Casamasino took no action to secure reappointment. For the next two years plaintiff continued to discharge all of the duties of the office of the tax assessor, and Jersey City continued to pay his salary. According to the certification of Joanne Monahan, who served as Acting Corporation Counsel to Jersey City from December 1991 to June 1992, she informed Casamasino that in her opinion he had not acquired tenure as tax assessor by virtue of his holdover status following his full four-year term, and recommended that he seek reappointment by the Mayor and confirmation by the City Council. According to Monahan's certification, Casamasino and his counsel declined to take any action to obtain his formal reappointment.

In the spring of 1992, Mayor McCann forfeited his office because of his conviction of a federal crime. Bret Schundler was elected in November 1992 to fill McCann's unexpired term, and in May 1993 Schundler was re-elected to a new four-year term as mayor. On June 30, 1993, Mayor Schundler fired plaintiff as tax assessor, sending him a letter stating that he was asserting his "mayoral prerogative not to reappoint plaintiff as assessor. Effective herewith, you are relieved of your duties."

Plaintiff contends that his termination from office resulted from Schundler's personal animosity toward him, dating back to a history of incidents in the late 1980s, before Schundler was mayor. Furthermore, in January 1993, Mayor Schundler wanted to implement a plan to reassess residential properties in Jersey City through the use of an outside appraisal firm whose methodology would focus on a comparison of 1988 residential assessments and 1992 residential sales. Plaintiff opposed the Mayor's plan because he believed the proposal violated the State Division of Taxation's requirements regarding the use of outside appraisal firms. More-

over, plaintiff maintains, the plan was unsupportable because it involved only residential properties, it did not require physical inspections, and the proposed reassessment methods were improper. Plaintiff wrote to the Director of the Division of Taxation, who confirmed the impropriety of the Mayor's plan. Plaintiff voiced his opposition to the reassessment plan both privately to the Mayor, and at a council meeting at which he was requested to state his opinion regarding the proposal. Plaintiff alleges that at the January 25, 1993 council meeting, the Mayor confronted plaintiff and threatened, "I'm going to get you, I'm going to embarrass you every chance I get." Subsequently, at the council meeting on February 3, 1993, the City Council rejected the Mayor's proposal.

In another incident, Jersey City's Director of Finance issued a two-day suspension to plaintiff, forcing him to seek reinstatement by court order. After a judge vacated the suspension on March 30, 1993, the City Council adopted a resolution authorizing the city to reimburse plaintiff $8079.14 in legal expenses. Plaintiff claims that he never recovered that money because the funds were never encumbered and, shortly thereafter, a newly constituted city council voted to rescind the prior resolution, finding that it lacked statutory authorization. Plaintiff asserts that defendant Jersey City also refused to implement an order by the same judge to establish a department for the tax assessor separate from the department of finance. Finally, plaintiff maintains that, subsequent to his termination, Mayor Schundler defamed him on a local call-in television program.

In July 1993, plaintiff filed an action in the Law Division seeking reinstatement as tax assessor and asserting numerous other claims against defendants including civil rights violations pursuant to 42 *U.S.C.* § 1983; violations of the Conscientious Employee Protection Act (CEPA), *N.J.S.A.* 34:19-1 to -8; and violations of the New Jersey Law Against Discrimination (LAD), *N.J.S.A.* 10:5-1 to -42. At the conclusion of the hearing on plaintiff's order to show cause why the removal should not be vacated, the Law

Division reinstated plaintiff as tax assessor and granted him tenure. The court noted that, although the Council had failed to confirm plaintiff's initial appointment as tax assessor, "plaintiff occupied his office in an open and notorious manner, and there is no contention that the City Council was unaware of that fact." The court concluded that the Council's inaction, combined with its obvious acquiescence to plaintiff's performance of the duties of tax assessor, constituted a ratification of the Mayor's attempted appointment of plaintiff as tax assessor. The court further concluded that the Mayor and Council's inaction after the expiration of Casamasino's four-year statutory term, which permitted him to continue in office for two additional years, constituted a reappointment that "gave rise to tenure." Rejecting the City's contentions that plaintiff's holdover status rendered him removable at the will of the governing body, the court observed:

> Defendant's contention would give municipalities license to subvert the clear legislative intent that assessors serve for fixed four-year terms. It would contravene the legislative intent to allow an appointing authority to create an at-will situation by simply failing to appoint an assessor but allowing him or her to continue in office and serve effectively at the whim or caprice of the appointing authority. That is precisely what the Legislature intended to avoid.

Plaintiff's remaining claims were dismissed on defendant's motion for summary judgment.

In a published opinion, 304 *N.J.Super.* 226, 699 *A.*2d 697 (1997), the Appellate Division affirmed Judge D'Italia's reinstatement of plaintiff as tax assessor and the grant of tenure to plaintiff, essentially for the reasons expressed by Judge D'Italia in his oral opinion. The Appellate Division also affirmed the dismissal of plaintiff's related claims. *Id.* at 234–46, 699 *A.*2d 697.

## II

Because the statute governing the term of office of tax assessors provides only for a fixed four-year term and does not authorize or contemplate holdover status, *N.J.S.A.* 40A:9–148, our resolution of the dispute over whether plaintiff's holdover status subjects him to removal without cause depends on which interpretation of that

statute best implements the underlying legislative purpose. That purpose can best be discerned by an examination of the overall legislative scheme relating to the assessment of real property.

Although tax assessors are appointed by the governing body or chief executive of a municipality, depending on the form of government, see *N.J.S.A.* 40A:9-146, the tax assessor's governmental function is authorized by the Legislature and is performed as an agent of the Legislature, not of the municipality. *Arace v. Irvington*, 75 *N.J.Super.* 258, 266, 183 *A.*2d 104 (Law Div.1962); *Ridgefield Park v. Bergen County Bd. of Taxation*, 61 *N.J.Super.* 170, 181, 160 *A.*2d 316 (Law Div.), *rev'd on other grounds,* 33 *N.J.* 262, 163 *A.*2d 144 (1960).

The Legislature has prescribed that a tax assessor's fundamental responsibility is, "after examination and inquiry, [to] determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract." *N.J.S.A.* 54:4-23. That the assessor must perform that assessment function independently, and free of any direct or indirect municipal control, is well settled. *Ream v. Kuhlman*, 112 *N.J.Super.* 175, 190, 270 *A.*2d 712 (App.Div.1970), *certif. denied,* 59 *N.J.* 267, 281 *A.*2d 529 (1971); *Arace, supra,* 75 *N.J.Super.* at 269, 183 *A.*2d 104.

To assure the independence of tax assessors and the integrity of the tax assessment process, the Legislature has established county boards of taxation in each county whose members, "chosen because of their special qualifications, knowledge and experience in matters concerning the valuation and taxation of property," are appointed by the Governor and confirmed by the Senate. *N.J.S.A.* 54:3-2. Each county tax board is required to review the tax lists prepared and submitted by the assessors in their county, *N.J.S.A.* 54:4-35, and to revise and correct the assessments where appropriate. *N.J.S.A.* 54:4-46 to—48. On or before May 13 of each tax year, the county tax boards must certify to each municipality the assessments, as revised, on the municipal tax list. *N.J.S.A.* 54:4-55. That certification by the county boards of

taxation completes the assessment process, to the end that any further changes in assessments can be achieved only by means of appellate review. *Woodstown Borough v. Lower Alloways Creek Township,* 124 *N.J.Super.* 347, 352–54, 307 *A.*2d 107 (App.Div.), *certif. denied,* 64 *N.J.* 154, 313 *A.*2d 214 (1973). Accordingly, a municipality aggrieved by an assessor's valuation of property within the municipality may appeal the assessment to the county tax board. *N.J.S.A.* 54:3–21. Thus, the county boards of taxation—not the municipal governing bodies—are the legislatively designated agencies directly responsible for reviewing the work of tax assessors, both administratively and though the tax appeal review procedure.

The ultimate authority over tax assessors is lodged with the Director of the Division of Taxation (Director), who is empowered to remove a municipal tax assessor for cause, *N.J.S.A.* 54:1–36, or to bring an action in Superior Court to compel an assessor's removal. *N.J.S.A.* 54:1–37. That the Legislature entrusted to the Director the authority to remove assessors for cause clearly reflects a legislative determination that municipal governing bodies or officials should not be empowered to influence or intimidate assessors by removal or threats of removal prior to the expiration of their terms in office.

In 1967 the Legislature enhanced the status and independence of assessors by creating a comprehensive examination and certification process. *L.* 1967, *c.* 44. Pursuant to *N.J.S.A.* 54:1–35.30, only individuals holding an assessor's certificate could be appointed or reappointed to the office of tax assessor, and issuance of the certificate was limited to applicants who were college graduates or possessed commensurate full-time experience as appraisers or assessors, and who passed an examination administered by the Director. *N.J.S.A.* 54:1–35.25. The statute also empowered the Director to revoke or suspend an assessor's certificate for cause. *N.J.S.A.* 54:1–35.29. In addition, the 1967 legislation established that an assessor who had received a tax assessor's certificate, had served as or performed the duties of tax assessor for four consecu-

tive years, and was reappointed as assessor, would be entitled to tenure. *N.J.S.A.* 54:1–35.31 provides in part as follows:

Notwithstanding the provisions of any other law to the contrary, every person

.(1) who, upon reappointment or re-election subsequent to having received a tax assessor certificate and having served as tax assessor or performed the duties of assessor for not less than 4 consecutive years immediately prior to such reappointment or re-election, or

(2) who, on or before June 30, 1969, shall have received a tax assessor certificate while actually in office as assessor or performing the duties of an assessor, and who, on or before June 30, 1969, shall have served as assessor or performed the duties of assessor for not less than 4 consecutive years,

shall hold his position during good behavior and efficiency notwithstanding that such reappointment or re-election was for a fixed term of years, and he shall not be removed therefrom for political reasons but only for good cause shown and after a proper hearing before the director or his designee after due notice.

Additional legislation intended to enhance the independence of tax assessors was enacted in 1982, *L.* 1981, *c.* 393, and the most significant provision mandated that the office of municipal tax assessor "not be assigned to a department of municipal government," but subjected the tax assessor's operations to municipal budgetary, personnel, accounting, purchasing and data processing procedures. See Senate County and Municipal Government Committee Statement on Senate Bill 3131 (*L.* 1981, *c.* 393). In addition, the statute exempted tax assessors from the removal power accorded to the municipal manager in the manager-council form of government, *N.J.S.A.* 40:69A–95(c).

Our decisional law, as well as our statutory law, has accorded consistent recognition to the need for tax assessors to be independent of municipal control and intimidation. Thus, in *Arace, supra,* 75 *N.J.Super.* 258, 183 *A.*2d 104, a municipal tax assessor sought to enjoin the municipality's governing body from conducting an investigation of the assessor's methods of assessing property in the community. In holding that the governing body was without power to investigate the assessor's methodologies, the Law Division noted that the municipality had the right of appeal to the county board of taxation if it was aggrieved by any assessment of property. *Id.* at 264, 183 *A.*2d 104. The court also emphasized the statutory directive that assessors "exercise independent judg-

ment in valuing real property." *Id.* at 266, 183 *A.*2d 104. Finally, the court concluded that an investigation by the governing body of the assessor's methods is irreconcilable with the legislative objective of insulating assessors from municipal pressure or control:

It is the judgment of the municipal assessor which the Legislature has determined to be the method for determining the true value of the property within a single taxing district. In exercising said judgment, the assessor is exercising a *quasi*-judicial authority as an agent of the Legislature, subject to the control and supervision of the county boards of taxation and the Director of the Division of Taxation in the manner provided by statute.

The assessor, in his relation to the municipality, is in much the same position as a magistrate. See *Kagan v. Caroselli,* 30 *N.J.* 371, 153 *A.*2d 17 (1959), wherein the court stated that "the power [of the municipality] to appoint did not make the functions of a magistrate a phase of local government. Rather, in exercising the appointive power, the governing body acts merely as a statutory agent." In determining property values, assessors, like judges, should perform their duties without fear or favor. Their *quasi*-judicial duties should be exercised free of pressure and harassment. To insure this protection, they should not be called upon to explain or justify their methods of calculating assessments. Those who feel aggrieved or discriminated against as a result of local assessments are provided with a statutory method of appeal by which their grievances will be heard and determined. Complaints of inefficiency may also be lodged with either the ·Director of the Division of Taxation or the county board of taxation. *Accordingly,* I find that the governing body is without authority to interrogate the plaintiff regarding his methods of assessment, such jurisdiction being vested by statute in the Director of the Division of Taxation and the county board of taxation. [75 *N.J.Super.* at 269–70, 183 *A.*2d 104.]

In *Ream, supra,* 112 *N.J.Super.* 175, 270 *A.*2d 712, taxpayers instituted a declaratory judgment action seeking a determination that the tax assessor, who had been duly elected under the township committee form of government, and reappointed following adoption of the council-manager form of government, continued in office notwithstanding the enactment of local ordinances that purported to shorten his four-year statutory term. Holding that the municipal attempt to diminish the assessor's statutory term was unlawful, the court based its holding on the legislative objective of assuring independence to tax assessors:

After citing *Clifton v. Zweir, supra* [36 *N.J.* 309, 177 *A.*2d 545 (1962)], for the proposition that "[j]udicial resolution of such matters must be guided by only one principle: legislative intent," we concluded that there can be no doubt that when the Legislature adopted the 1938 legislation "it intended that assessors in all municipalities thereafter have four-year terms, for the statute said so." We

further observed that the Legislature made its intent doubly plain by providing in *N.J.S.A.* 40:46–6.3 that 40:46–6.2 shall "be construed and applied to include tax assessors in all municipalities of this State, irrespective of the form of government under which such municipalities may operate. . . ."

It follows that a municipality is without authority to establish any other term, either longer or shorter, than that fixed by the Legislature, and that once a valid appointment has been made, the office, in contemplation of law, has been filled for the statutory period.

. . .

The reasons for insulating a tax assessor with a fixed term of office are manifold. His office, an integral part of our state, county and municipal governments, is chargeable with the administration of a statutory system relating to the levy, assessment and collection of property taxes. He is an agent of the Legislature, and his discretionary judgment is reviewable only through the administrative and judicial processes provided by law. Although his jurisdiction is local, his powers and duties are prescribed by the Legislature, and it is of paramount importance that the integrity of his office be in no way diluted by local interference.

[112 *N.J.Super.* at 188–90, 190, 270 *A.*2d 712 (citations omitted)(footnote omitted).]

In *Municipal Assessors v. Mullica Township,* 225 *N.J.Super.* 475, 542 *A.*2d 970 (Law Div.1988), a municipal tax assessor sought to compel his municipality to award him a salary increase commensurate with the increases awarded to other township employees. The assessor relied on *N.J.S.A.* 40A:9–165, which provided in part:

Salaries, wages or compensation fixed and determined by ordinance may, from time to time, be increased, decreased or altered by ordinance. No such ordinance shall reduce the salary of, or deny without good cause an increase in salary given to all other municipal officers and employees to, any tax assessor, tax collector or municipal clerk during the term for which he shall have been appointed.

The plaintiff further alleged that he had received a smaller salary increase because of his refusal to provide the mayor with weekly reports concerning his assessing activities. The township contended that it had complied with the statute simply by increasing the assessor's salary, even though the increase was less that that provided to other employees. The court rejected the township's argument, ordering that the plaintiff receive an increase commensurate with those awarded to other employees. The court observed:

Defendants' arguments completely overlook the relationship between a municipality and its assessor and fail to recognize the obvious and overwhelming need of the assessor to be free from municipal interference in making his assessments and in carrying out his responsibilities as the assessor. Even in *Horner v. Ocean Tp. Comm., supra,* which held that a municipality has "the power to set reasonable hours for work for" assessors, the court recognized "the limited role the municipalities have with respect to the assessors."

Municipalities have a limited role with respect to assessors so that assessors can carry out their responsibilities free from political pressure and secure in the knowledge that, if they perform their responsibilities as assessors honestly and completely, they need not fear reprisals nor retaliation from municipal officials. For example, the compensation of a tax assessor may not be reduced during his term of office. If a tax assessor is certified pursuant to *N.J.S.A.* 54:1–35.25 and completes four years in office, he will attain tenure in office upon reappointment and hold his position during good behavior to be removed from office only for good cause after a hearing before the Director, Division of Taxation, or his designee, not before the municipality.

The purpose of the 1982 amendment to *N.J.S.A.* 40A:9–165 is to enhance the assessor's independence. The amendment does not permit only a token increase in salary for an assessor when compared to the increases given to other municipal employees. The purpose of the statute would be frustrated unless an assessor was given an increase commensurate with increases given to other municipal employees, in the absence of good cause to the contrary. To accomplish the purpose of the statute, it should be interpreted by a mind sympathetic to its aims and which recognizes the difficulties inherent in formulating a precise expression of legislative intent.

The use of a salary ordinance to control an assessor is the very thing the statute sought to avoid and is the very thing the municipality did in this case. The municipality retaliated against the assessor by giving him a smaller increase than that given to other employees because he refused to file reports with the mayor. Such a refusal by the assessor is not good cause for a smaller increase....

The court concludes that *N.J.S.A.* 40A:9–165 requires an assessor to receive an increase commensurate with increases given other employees unless there is good cause shown by a municipality why the assessor should not receive such an increase. Any other interpretation of the statute would make it meaningless and frustrate the often demonstrated legislative purpose of insulating the assessor from local government pressure.

[225 *N.J.Super.* at 481–83, 542 *A.*2d 970 (citations omitted).]

## III

### A.

Remarkably, the Court virtually ignores the abundant legislative history and decisional law that illuminates the legislative purpose to protect tax assessors from the very kind of politically

inspired removal that befell plaintiff. Disregarding almost completely the legislative interest in the independence of tax assessors, the Court focuses its attention instead on a mundane provision of the Faulkner Act, *N.J.S.A.* 40:69A–43(b), that requires appointment of the tax assessor to be made by the mayor with the advice and consent of the council. *Ante* at 342–44, 730 *A.*2d at 292–93. Characterizing the requirement of council confirmation of tax assessors as mandated by "separation of powers principles," *ante* at 344, 730 *A.*2d at 293, the Court then proceeds, by virtue of a crabbed reading of our decisional law concerning implied ratification of governmental action, to the extraordinary determination that plaintiff's appointment as tax assessor *was not ratified by the Jersey City Council, ante* at 350–54, 730 *A.*2d at 296–99, notwithstanding that plaintiff openly served as Jersey City's tax assessor for a full four-year statutory term without a hint of objection by any member of the council. That conclusion leads the Court to characterize plaintiff as merely a *de facto* assessor who, as such, could not acquire tenure and who, therefore, was removable at will. *Ante* at 349–54, 730 *A.*2d at 296–98. In an unsuccessful effort to avoid in future cases the issue posed by this appeal, the Court declares that prospectively tax assessors will not readily be able to acquire *de facto* status, and that such status will be limited to cases "in which the assessor failed to take the oath of office or where he or she *mistakenly continued in office after the expiration of a full term." Ante* at 354, 730 *A.*2d at 299 (emphasis added). In my view, that questionable limitation on *de facto* status will encourage—not discourage—municipalities to postpone reappointment of assessors and will result in an increased number of assessors serving as "holdovers" and subject to political influence and manipulation.

### B.

The preferred disposition of this appeal should be one that best protects tax assessors from local political intrigue and advances

the clearly articulated legislative goal of tax assessor independence from municipal control. To that end, I would hold that plaintiff's initial four-year appointment was ratified by the Council when it took no action either to confirm him or to object to his services as tax assessor. Although somewhat more difficult analytically, I would also conclude that the inaction of the Mayor and Council after expiration of plaintiff's first four-year term, combined with plaintiff's open and unchallenged service as tax assessor for two additional years, constituted an implied ratification of plaintiff's continued service as tax assessor for a second four-year term. Finally, I would hold that the lack of an express reappointment and confirmation precluded plaintiff from obtaining tenure, although his removal prior to the expiration of his second four-year term was unlawful.

The Court properly recognizes the settled principle that municipalities may impliedly ratify not only contracts, *Johnson v. Hospital Serv. Plan,* 25 *N.J.* 134, 140–41, 135 *A.*2d 483 (1957), but personnel appointments as well, *Barkus v. Sadloch,* 20 *N.J.* 551, 556, 120 *A.*2d 465 (1956). *Ante* at 345–47, 730 *A.*2d 294. Despite that recognition, the Court interprets the decisional law to hold, for purposes of this appeal, that the Council's ratification of plaintiff's appointment depended on "an open, unequivocal act intended as a substitute for a formal resolution of the council approving the mayor's appointment." Respectfully, such a requirement is not to be found in the relevant cases, nor is it a sensible or practical standard for determining whether implied ratification of an appointment has occurred.

Two of our cases point the Court toward the correct decision here. In *Ratajczak v. Board of Educ., Perth Amboy,* 114 *N.J.L.* 577, 177 *A.* 880 (Sup.Ct.1935), *aff'd,* 116 *N.J.L.* 162, 183 *A.* 214 (1936), Justice Heher pragmatically applied the doctrine of implied ratification to an appointment of a school janitor made by the chairman of the Board of Education's building committee rather than by the Board itself. Ratajczak had been employed by the Board as janitor from 1928 to 1933 when the Board replaced him

with Godlesky, prompting Ratajczak to appeal to the Commission-
er of Education and rely on a statute protecting public school
janitors from discharge except for cause established at a hearing.
The Board argued that Ratajczak was merely an at-will employee,
never having been duly appointed by the Board. But the proofs
established that when Ratajczak's predecessor, John Lynch, re-
tired in 1930, the Board's business manager obtained authorization
from the Board's building committee chairman to replace Lynch
with Ratajczak, and that Ratajczak continued to function as janitor
until his purported discharge in 1933. Responding to the conten-
tion that only the Board was authorized to hire janitors, Justice
Heher observed:

> But it is insisted that these officers of the local board had no authority to employ
> Edward in the capacity of a janitor, and that it was the invariable custom to
> accomplish that by resolution of the board. Even so, there was, in the circum-
> stances here presented, indubitable ratification by the board of the act claimed to
> be an excess of authority, but in any event done or professedly done on the board's
> account. . . . And there may be ratification by implication. Ratification may be
> implied from acts, words, or conduct on the part of the principal, which reasonably
> tend to show an intention to ratify the unauthorized acts or transactions of the
> agent. Of course, the principal must act in the premises with knowledge of the
> material facts.

[114 *N.J.L.* at 581, 177 *A.* 880 (citations omitted).]

This Court also adopted a pragmatic, common-sense approach
to the implied ratification doctrine in *Barkus, supra,* 20 *N.J.* 551,
120 *A.*2d 465. The plaintiff, Sophie Barkus, had been employed in
the Garfield City Hall as a switchboard operator from October 21,
1952, to January 15, 1954, when her services were terminated by
resolution of the City Council and one Helen Vancho appointed in
her place. Relying on a statute that prohibited the firing of
honorably discharged veterans except for cause after a hearing,
Barkus challenged the legality of her termination. *Id.* at 553, 120
*A.*2d 465. The evidence established that Barkus had been hired
by the Mayor, although only the City Council was authorized to
hire employees. *Id.* at 554–56, 120 *A.*2d 465. She performed
services as a switchboard operator, receptionist, information clerk,
and as an assistant to the city clerk in posting payroll records.
The evidence at trial indicated that the City Council regularly

approved payrolls on which Barkus' name appeared. *Id.* at 556, 120 *A.*2d 465.

Without any suggestion that some formal action of the council was a condition of ratification, this Court held that Barkus' invalid appointment by the Mayor was ratified by the City Council simply on the basis of its knowledge that she had worked for the city for fifteen months:

> [P]laintiff testified that she had been hired by the mayor of Garfield in October, 1952. The party occupying the office of mayor in 1952 testified that he had hired plaintiff and assigned her duties. Plaintiff performed these duties for a period of over two years in the conspicuous surroundings of the City Hall. Her name appeared on every payroll approved by resolution of the city council during this period. She was informed that municipal economy dictated her discharge, but the defense did not rest upon this ground. Indeed, a replacement was appointed on the same day that the resolution discharging plaintiff was passed.
>
> We find as a fact that plaintiff was hired by the mayor of Garfield for an indefinite term. Her appointment, although invalid in its inception, was ratified by the city council.
>
> ... As an honorably discharged veteran of the United States Army she is entitled to the benefits of the Veterans' Tenure Act.
>
> [20 *N.J.* at 556–57, 120 *A.*2d 465 (citations omitted).]

By analogy to the holdings in *Ratajczak* and *Barkus,* the conclusion is inescapable that the Jersey City Council ratified Mayor Cucci's appointment of Casamasino to his initial four-year term. The Council was notified of the appointment by the Mayor, and took no action for the ensuing four years to confirm or to challenge the appointment, although fully aware that plaintiff was serving as assessor. Moreover, that result has the virtue of consistency with the Legislature's clear objective to restrict assessors to only four-year terms and to protect assessors from vulnerable holdover status.

With respect to the second four-year term, the facts closely resemble the *Barkus* case. In *Barkus* the appointing authority—the City Council—never appointed Barkus but was held to have ratified her unauthorized appointment by the Mayor. In this case the Mayor, who was the appointing authority, failed to reappoint plaintiff, and both the Mayor and the City Council permitted him to serve as tax assessor for two additional years. The Court's

disposition renders plaintiff a *de facto* holdover assessor, vulnerable to political reprisals or removal in direct conflict with the Legislature's clearly expressed objective. I would hold that the Mayor and Council's acquiescence to plaintiff's unchallenged service as tax assessor for two full years constitutes an implied ratification of his "appointment" to a second four-year term. As a matter of law, I would construe *N.J.S.A.* 40A:9–148 to prohibit municipalities from willfully or inadvertently exposing tax assessors to the vulnerability of holdover status.

Nevertheless, I would not construe *N.J.S.A.* 54:1–35.31 to permit plaintiff to acquire tenure on the basis of a "reappointment" that was impliedly ratified rather than express. The significant additional protections accorded to tax assessors by the tenure statute should, in my view, be triggered only by an express decision by the appointing authority, accompanied by formal confirmation. That interpretation of the tenure statute, however, does not leave plaintiff subject to removal until completion of his second four-year term.

Accordingly, I would affirm but modify the judgment of the Appellate Division.

POLLOCK, J., joins in this dissent.

*For reversal*—Chief Justice PORITZ and Justices HANDLER, O'HERN, GARIBALDI, and COLEMAN—5.

*For affirmance and modification*—Justices POLLOCK and STEIN—2.