12 N.J. Super. 515 (1951)
79 A.2d 877
CHARLES DE FAZIO, JR., PLAINTIFF-APPELLANT,
v.
THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ETC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1951.
Decided March 13, 1951.
*516 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Anthony J. Armore argued the cause for the appellant (Mr. Samuel J. Davidson, attorney).
Mr. E. Norman Wilson argued the cause for the respondent (Mr. Dominick R. Rinaldi, attorney).
The opinion of the court was delivered by JAYNE, J.A.D.
The appendix in this case contains a stipulation from which the material factual events are collected. It was upon the same agreed statement of facts that this action was submitted to the Hudson County Court for determination without a jury. The final judgment of no cause for action is here impugned.
The City of Hoboken is governed in pursuance of the adoption of the commission form of government and the Civil Service Law. On May 23, 1947, Mr. Otmar J. Pellett occupied the office of assistant corporation attorney in the law department of the city established by ordinance on June 1, 1943. On May 13, 1947, new commissioners were elected, and after the organization of the group, the Director of the Department of Revenue *517 and Finance submitted to the commissioners the appointment of the appellant, Mr. Charles De Fazio, Jr., to a position denominated as assistant city attorney. On May 23, 1947, the appointment was by a resolution of the commissioners ratified and confirmed.
On June 3, 1947, the commissioners enacted an ordinance creating the position of assistant city attorney and vested the appointing authority in the Director of Revenue and Finance. At a regular meeting held on June 10, 1947, the commissioners received from the Director of Revenue and Finance a communication bearing date June 4, 1947, announcing his appointment of the appellant to the position of assistant city attorney at an annual salary of $6,250 payable semi-monthly.
To effectuate the program it was evidently deemed prudent to repeal the former ordinance of 1943 by which the position of assistant corporation attorney occupied by Mr. Pellett was originated. To that end an ordinance was adopted by the commissioners on June 3, 1947, to become effective June 14, 1947, repealing the former ordinance.
It is noticed that the commissioners determined that the former ordinance should be repealed "for reasons of economy as well as the resulting efficiency from a re-organization of the law officers of the City."
In the situation, the favorable consideration of the Civil Service Commission was required. Camden v. Civil Service Commission, 129 N.J.L. 354 (Sup. Ct. 1943), affirmed 130 N.J.L. 532 (E. & A. 1943). The action of the city commissioners and of the Director of Revenue and Finance was by the prompt appeal of Mr. Pellett appropriately brought to the attention of the Civil Service Commissioners, who rendered a decision on September 9, 1947, from which we extract this quotation: "All that has been done by the City in this case has been to change the designation of the individuals who are to perform the legal work of the city. A mere change in title or designation of the agency, individual or individuals who are going or who are to do the legal work of the City can have no effect upon the rights or status of employees in the classified *518 civil service. If economy is sought a reduction in forces will accomplish the ends sought."
The Civil Service Commission ordered "that the action of the Board of Commissioners, the Director of the Department of Revenue and Finance, or the City Attorney of the City of Hoboken, or of any of them, in removing or dismissing from or discontinuing the services of Otmar J. Pellett as Assistant Corporation Attorney or Assistant City Attorney, effective on or about May 23, 1947, be and the same is hereby set aside and the said Board of Commissioners, the Director of the Department of Revenue and Finance and the City Attorney or any or all of them be and they are hereby directed to restore the said Otmar J. Pellett to the pay and title given or undertaken to be given to Charles J. De Fazio, Jr., effective as of the date of his removal or discontinuance from such service."
The writ of certiorari by which the order of the Civil Service Commission was transported for review by the Supreme Court was dismissed. Hoboken v. Civil Service Commission, 137 N.J. Law 72 (Sup. Ct. 1948). The judgment of the Supreme Court was affirmed. 137 N.J. Law 728 (E. & A. 1948). In the opinion of the Court of Errors and Appeals may be found the following observation: "In fact, the purpose seems to have been solely to defeat the Civil Service Law and place in office a new incumbent." So, it may be said that the displacement of Mr. Pellett as assistant corporation attorney by the present appellant as assistant city attorney has been definitely adjucated to have been improper.
A judgment awarding Mr. Pellett $10,275 salary from May 15, 1947, to January 1, 1949, was affirmed. Pellett v. Hoboken, 4 N.J. Super. 259 (App. Div. 1949). Subsequent events of interest but of no relevancy to the present appeal are revealed in Pellett v. Dep't. of Civil Service, 10 N.J. Super. 52 (App. Div. 1950).
It is acknowledged that from May 23, 1947, until his resignation on December 31, 1947, the appellant acted as *519 assistant city attorney and rendered such services for the city as were assigned to him by the city attorney.
The present action was prosecuted by the appellant to recover from the city the sum of $3,801.37 for the services he performed as such assistant city attorney calculated upon the basis of an annual salary of $6,250. Counsel for the appellant did not at the argument undertake to sustain any legitimate claim for compensation for services rendered between May 23, 1947, and June 4, 1947.
The appellant's alleged cause of action is predicated upon the hypothesis that he was a de facto occupant of the position and as such entitled to compensation for the services he performed for the city in that capacity.
The definition of a de facto official composed by Chief Justice Butler upon an exhaustive research of the authorities manifested in his decision in State v. Carroll, 38 Conn. 449 (Sup. Ct. of Errors 1871), has had a remarkably concordant decisional lineage. A general discussion of the definitions and the distinctions drawn by the courts between de jure officers, de facto officers, and intruders or usurpers may be found in Throop, Public Officers, c. XXVII, sec. 622, et seq.; Mechem, Public Officers, sec. 315, et seq., and Constantineau, De Facto Doctrine, sec. 21, et seq.
If we were to assume that the appellant occupied unqualifiedly the legal status of a de facto officer, our investigation of the pertinent authorities reported in the state jurisdictions generally relative to the right to recover compensation for services so performed would disclose that such pronouncements may be assembled in four general groups. The largest group is comprised of those decisions which adhere to the rule that the right to compensation is an incident to the legal title to the office. The second largest class includes those cases in which the de facto officer in good faith and with a reasonable and conscientious belief of his authority performs under color of title the duties of the office. The third collection relates to cases in which there is no other claimant, whereas the fourth cluster embraces cases in which there is another who *520 is rightfully entitled to the office and to its emoluments. Vide, Annotation, 93 A.L.R. 258.
We need not, however, embark upon a diversified discussion of the adjudications in general. For present purposes we have in our own jurisdiction such relevant authorities as Erwin v. Jersey City, 60 N.J. Law 141 (E. & A. 1897), reversing 59 N.J. Law 282 (Sup. Ct. 1896); Stuhr v. Curran, 44 N.J. Law 181 (E. & A. 1882); Meehan v. Freeholders of Hudson, 46 N.J. Law 276 (Sup. Ct. 1884); Dugan v. Farrier, 47 N.J. Law 383 (Sup. Ct. 1885), affirmed 48 N.J. Law 613 (E. & A. 1886); Brinkerhoff v. Jersey City, 64 N.J. Law 225 (E. & A. 1900); Blore v. Board of Freeholders, 64 N.J. Law 262 (E. & A. 1900); Gaskill v. Atlantic City, 89 N.J. Law 269 (E. & A. 1916); McArt v. Town of Belleville, 97 N.J. Law 396 (Sup. Ct. 1922); Handlon v. Town of Belleville, 4 N.J. 99, 109 (1950).
Fundamentally, it must be realized that the doctrine pertaining to the activities of de facto officers had its origin in the policy of the public interest and protection. Not unlike many other beneficial doctrines of the law and indeed advantageous legislation, it is not permitted to be utilized for mischievous purposes.
The present case has a factual setting within the logical periphery of the distinguishing principle which becomes apparent upon the comparison, for example, of the decisions in the Erwin case, in which the directed verdict for the city was reversed, and in the Gaskill case, in which the directed verdict for the municipality was affirmed. The pivotal point is whether the appellant acted in good faith within the legal acceptation of that term. Good faith has been defined to consist of an honest intention to abstain from taking an unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of notice, information or belief of facts which would render the transaction or undertaking mischievous and insidious. 1 Bouvier, Law Dict. (Rawle's 3d ed.) 1358.
*521 While we find no reason to cast any derogatory reflection upon the conduct and deportment of the appellant, we measure his faith, good or bad, within the ambit of the controlling principle, by the knowledge he had of the course of events.
Here the appellant was fully aware on May 23, 1947, that there was the position of assistant corporation attorney lawfully existing and lawfully occupied by Mr. Pellett. He doubtless perceived that the new board of commissioners exhibited a propensity to do some "house cleaning." Initially the appellant must have realized that he was vainly attempting to inhabit a fabulous and legally inexistent official position. Next he watched the city commissioners metamorphose the position of assistant corporation attorney by disguising it as assistant city attorney. He thus moved into a position already tenanted by Mr. Pellett. Are we to assume that there were then both a de jure and a de facto occupant of the same position, or two de facto incumbents? Re common law rule, 3 McQuillin, Mun. Corp., sec. 12.102, on p. 381; 46 C.J., 1055, sec. 368; 43 Am. Jur. 226, Public Officers, sec. 473.
The appellant immediately learned that the Civil Service Commission would not in the circumstances approve the payment of his salary. R.S. 11:22-20; 11:21-1. Proceedings before the Commission were promptly inaugurated, a hearing was held on July 17, 1947, and a decision rendered on September 9, 1947. The appeals from the order of the Civil Service Commission to the former Supreme Court and to the Court of Errors and Appeals followed. The propriety of the appellant's appointment was throughout the period of his services to his knowledge constantly in controversy.
We express no doubt of the validity of the appellant's acts in their relation to the public, but we are of the opinion that his status is in principle in its relation to the right to recover salary from the city analogous to that of Gaskill in his action in which Justice Trenchard stated: "In the present case there was no vacancy either in law or in fact, and the plaintiff knew that his claim to the office was seriously challenged *522 by the incumbent. Indeed, he knew before the election that if elected his right to the office and its salary would be questioned. * * * we do not attribute any such fraud or sinister conduct (Meehan v. Freeholders of Hudson, supra) to the plaintiff. But, concededly, he knew that Mr. Keffer disputed his title. Concededly, he participated in the forcible ousting of Mr. Keffer."
In legal rationale the appellant in the prosecution of the present action may well be actually and theoretically classified as an intruder to whom the law denies a right to recover salary.
To sustain the right of a claimant to recover the emoluments of an office or position in circumstances such as exist in the present case would be to confer unqualified judicial approbation to the adage "to the victor belong the spoils." It seems apparent that the appellant felt the pulse of chance in the twilight of a new day and hopefully and adventurously enlisted in the experiment. The taxpayers ought not be obliged to indemnify him against the adventitious loss. We pause also to explain that this is not a case in which the appellant had been duly installed, thereafter dismissed, and continued to perform his duties pending the determination of the appeals. Cf. Freudenreich v. Mayor, &c., Fairview, 14 N.J. Misc. R. 804 (Sup. Ct. 1936).
The statute (R.S. 40:11-7) has not eluded our attention. We decline to so construe it to give it application to the circumstances of the present case. The appellant does not have the requisite status of a de facto official contemplated by the enactment. The statutory provision (R.S. 11:21-2) has no application whatever to the subject matter of this litigation.
The judgment of the Hudson County Court is affirmed.