**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0917-20

PHILLIP REED,

    Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF
THE CITY OF EAST ORANGE,
ESSEX COUNTY,

    Defendant-Respondent.

_____

Argued December 1, 2021 – Decided February 1, 2022

Before Judges Whipple, Geiger, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0091-19.

William P. Hannan argued the cause for appellant (Oxfeld Cohen, PC, attorneys; William P. Hannan, of counsel and on the briefs; Rachel Leigh Adelman, on the briefs).

Gerald A. Shepard argued the cause for respondent (Pfund McDonnell, PC, attorneys; Mary C. McDonnell and Gerald A. Shepard, on the brief).

PER CURIAM

Plaintiff Phillip Reed appeals from an October 30, 2020 summary judgment order dismissing his complaint against the Board of Education of the City of East Orange (BOE) under the de facto employee statute, N.J.S.A. 18A:16-11.  We reverse.

Since 2008, BOE employed plaintiff as a security guard.  Plaintiff was promoted to Security Supervisor in 2011, with a $75,000 annual salary, which increased to $85,730 by 2017.  Plaintiff signed annual at-will employment contracts with the BOE as Security Supervisor for the 2011 – 2012 through 2017 – 2018 school years.  Although these contracts listed the position as Security Supervisor, plaintiff asserts the promotion was actually to the Supervisor of Safety[1] position, which the BOE identifies as two levels higher than the position identified in the contracts.  Plaintiff concedes the BOE never approved him for the Supervisor of Safety position.

---

[1] The parties and the motion judge used several phrases interchangeably to refer to the two positions.  We use "Security Supervisor" to refer to the position listed in the contract, which the BOE refers to as "Supervisor of Security," and the court referred to as "Security Director."  We use "Supervisor of Safety" to refer to the de facto position, which the court referred to as "Director of Safety" or "Safety Director."

Plaintiff's duties changed after the promotion in April 2011, paralleling the on-paper description of the Supervisor of Safety, rather than his contractual position of Security Supervisor. Plaintiff was responsible for the "total security of the whole district . . . that entailed working on call [twenty-four]-hours a day, seven days a week." He supervised almost 100 security employees, which included every security guard in the district and twenty-two facilities, maintained security vehicles, and attended professional development. He reported directly to the superintendent, Dr. Kevin West, attended the superintendent's monthly cabinet meetings with seven or eight high-ranking district administrators and department heads, submitted monthly reports to the superintendent, and presented at annual board retreats.

Plaintiff was held out as the only Supervisor of Safety. There was no other Supervisor of Safety, besides plaintiff, from 2011 to 2018. At times, there had been as many as four security supervisors. Documents and members of the district referred to plaintiff as the Supervisor of Safety. The district directories listed him as Supervisor of Safety for the 2011 – 2012, 2012 – 2013, 2013 – 2014, 2014 – 2015, 2016 – 2017, and 2017 – 2018 school years, which the BOE certified as true and accurate copies. Plaintiff's 2018 annual evaluation listed him as the Supervisor of Safety. Business Administrator(s)/Board

3 

Secretary(ies), Victor Demming and his successor, Craig Smith, sent plaintiff at least six memos addressing him as Supervisor of Safety, which the BOE has certified as true and accurate copies. Director of Labor Relations and Employment Services, Marissa McKenzie, told plaintiff that his position title was "Supervisor of Safety" in an April 2018 email. Despite the foregoing documentation, the BOE's salary records listed plaintiff as a security supervisor every year from 2011 to 2018. Despite the BOE's assertion that the Security Supervisor and Supervisor of Safety are two levels apart, the job descriptions overlap.

The Security Supervisor "[m]anages, oversees and coordinates the designated shift" and "[s]upervises and evaluates shift security personnel (as assigned)." The Supervisor of Safety "[s]upervises and evaluates the [security supervisor]," "[m]anages, oversees and coordinates the District's Security Program," and "supervises and evaluates all security personnel." The Security Supervisor reports to the Supervisor of Safety and the superintendent, but the Supervisor of Safety only reports to the superintendent. Further, the listed qualifications vary; the Supervisor of Safety requires more education and different experience.

A-0917-20

The positions also vary as to compensation. The Security Supervisor's salary is "[n]egotiable; based on background, training, and experience[; and is] unaffiliated/confidential." The Supervisor of Safety's salary is an "unaffiliated/confidential salary to be determined." The new Supervisor of Safety, as designated in his transfer paperwork, was to receive the same $85,000 that plaintiff received in his final 2017 – 2018 year. Plaintiff argued that because the position is non-union, it is negotiable.

The BOE did not renew plaintiff's contract for the 2018 – 2019 school year, so his employment ended in June 2018. In the BOE's non-renewal letter, the superintendent referred to plaintiff's position as Supervisor of Safety. In its response to plaintiff's request for a statement of reasons, the BOE identified plaintiff's job as Supervisor of Safety.

On January 4, 2019, plaintiff sued the BOE under the de facto employee statute, N.J.S.A. 18A:16-11, seeking an increased salary commensurate with his de facto promotional position to Supervisor of Safety from September 2011 to June 2018. He sought $110,684 as the minimum annual compensation to which he was entitled, a salary on par with the facilities director's salary.

A-0917-20

After the close of discovery, the BOE moved for summary judgment. On October 30, 2020, the court granted summary judgment to the BOE and dismissed all claims with prejudice.

In its written statement of reasons, the court found a genuine dispute of material fact as to whether plaintiff received a de facto promotion. The court found ample evidence in the motion record that would permit the trier of fact to find that plaintiff was the de facto holder of the position of Supervisor of Safety for all or most of the time period at issue. The court nonetheless granted summary judgment for the BOE on the question of damages. The court found that plaintiff did not adduce any facts that would permit the trier of fact to determine, without speculation, the emoluments and appropriate compensation of the position to award compensatory damages. This appeal followed.

Plaintiff argues summary judgment was improper because a jury could weigh the evidence and determine whether and to what extent plaintiff was entitled to a higher salary by comparing his position with others who held the rank of cabinet member, such as the Facilities Manager who heads the Maintenance and Security Department (the same Department under which the Supervisor of Safety works). We agree.

A-0917-20

"We review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We do not defer to a trial court's assessment of the documentary record, as the decision to grant or withhold summary judgment does not hinge upon a judge's determinations of the credibility of testimony rendered in court; rather, it determines a question of law. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Plaintiff sued the Board under the de facto employee statute, N.J.S.A. 18A:16-11, seeking an increased salary commensurate with his de facto promotional position to "Supervisor of Safety." If plaintiff can provide sufficient evidence to show a genuine dispute of material fact on each element of the statute, summary judgment is improper. N.J.S.A. 18A:16-11 states:

> A person who holds de facto any office, position or employment in a school district and who performs the duties thereof shall be entitled to the emoluments and compensation appropriate thereto for the time the same is so held in fact and may recover therefor in any court of competent jurisdiction.

In Rawitz v. Cnty. of Essex, the Law Division construed de facto employment under N.J.S.A. 40A:9-6, which is the civil service equivalent to N.J.S.A. 18A:16-11. 347 N.J. Super. 590, 594 (Law Div. 2000). In Rawitz, the

7

trial court used the common law definition of de facto officer, see id. at 594

(citing In re Fichner, 144 N.J. 459, 468 (1996)), to interpret the de facto doctrine

under the civil service statute as:

> [A]n open and notorious occupancy of a public office, under color of authority but without benefit of appointment, i.e. a holding out to the public with the acquiescence of one's principal, as a result of which the acts of the officer are binding as to the principal and members of the public who rely thereon[,]
>
> [Id. at 597.]

The plaintiff did not fit that statutory interpretation because he never claimed he

had the position or requested the title or salary, nor was he relied on in that

position, id.; rather, he assumed the duties without direction, see id. at 598.

We affirmed the trial court and further explained the standard for de facto

recovery. Rawitz v. Cnty. of Essex, 347 N.J. Super. 570, 572 (App. Div. 2002).

We said:

> It is not sufficient for one seeking recovery . . . to show simply that he or she performed the duties of a particular position. Rather, the statute prescribes that one seeking such recovery must meet two requirements: first, the claimant must demonstrate that he or she "held" the "office or position" on a de facto basis; and second, that, while holding the position on that de facto basis, the claimant "performed the duties" of the position.
>
> [Ibid.]

Here, the court found "ample evidence in the motion record that would permit the trier of fact to find that [plaintiff] was the de facto holder of the position. . . ." Notably, the court found:

> Not only did senior officials of the [BOE] acknowledge [this] to [plaintiff] in multiple written communications, but the human resources director responded to an inquiry from [plaintiff] as to his status that he held the position of [Supervisor of Safety]. He has also testified that he performed security functions on a [d]istrict-wide basis, commensurate with the description of the [Supervisor of Safety] position, and regularly participated in [c]abinet-level meeting of the senior administrative staff reporting to the [s]uperintendent. Such facts are sufficient for the trier of fact to find that the [plaintiff] occupied and performed the position notwithstanding his written contracts indicating to the contrary.

The motion court found plaintiff met the Rawitz de facto doctrine because 1) plaintiff was held out to be in the position in memos and meetings and 2) he performed district-wide functions, as described in the Supervisor of Safety position.

These are the only two elements to establish a de facto position. Finding ample evidence of meeting those elements means plaintiff is entitled to the emoluments of that position, which is not an element, but rather the remedy. We

9

conclude the court improperly dismissed on a finding that was not relevant to the analysis.

Moreover, under the "light most favorable" standard in Brill, 142 N.J. at 523, a party must provide evidence of certainty of obtaining damages, while the exact amount may be open to "considerable speculation," V.A.L. Floors, Inc. v. Westminster Cmties., Inc., 355 N.J. Super. 416, 424 (App. Div. 2002). "[T]he rule relating to the uncertainty of damages applies to the uncertainty as to the fact of damage and not as to its amount, and where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery." Ibid. (quoting Tessmar v. Grosner, 23 N.J. 193, 203 (1957)).

In granting summary judgment for the BOE on damages, the court stated that plaintiff "simply has not adduced any facts that would permit the trier of fact to determine, without rank speculation, the 'emoluments and appropriate compensation' of the position of [Supervisor of Safety] and thus award compensatory damages." However, "that is a question that must ultimately be decided by the jury, acting . . . 'upon reasonable inferences and estimates,'" V.A.L. Floors, 355 N.J. Super. at 427 (quoting West Haven Sound Dev. Corp. v. West Haven, 514 A.2d 734, 742 (Conn. 1986)). The appropriate emoluments and compensation can be straightforward, but that may not be so in this case.

A-0917-20

To calculate an amount of damages if damage occurs, a party must lay a foundation for a fact finder to make a fair and reasonable estimate of the damages incurred. Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997) (citing Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)). "[A]bsolute precision in fixing damages may not be attainable," Am. Sanitary Sales Co. v. Dep't of Treasury, Div. of Purchase & Prop., 178 N.J. Super. 429, 435 (App. Div. 1981), and "it would be unjust to deprive a plaintiff of a remedy merely because of 'the absence of [the] means for precision,'" Fin. Servs. Vehicle Tr. v. Panter, 458 N.J. Super. 244, 252 (App. Div. 2019) (alteration in original) (quoting Am. Sanitary Sales, 178 N.J. Super. at 435).

Plaintiff identified $110,684 minimum compensation in his complaint because the BOE attorney recommended this to his attorney as being on par with the facilities director's salary, which is the next lowest cabinet-member salary. This is not so speculative to the point that a jury could not determine how much the BOE would have paid plaintiff for the de facto position rather than his contract position.

Because the amount the BOE might have paid if it contracted for the de facto position rather than repeatedly contracting for a non-director position is disputed, the case should go to a jury. Of course, not all higher positions earn

11

higher compensation, but the jury could determine whether the BOE contracted at a lower position to keep plaintiff from negotiating a higher salary for a higher position. And the jury could determine, based on the next lowest-paid member and other members' salaries, what compensation would be reasonable for plaintiff, a person with unique qualifications different from his replacement, to earn if he had the opportunity to negotiate for a Supervisor of Safety contract.

We also reject the BOE's argument that plaintiff cannot raise a de facto argument because he signed a binding contract with a different position and lower salary. This would defeat the purpose of the de facto statute. If an employer could list any position on a contract, then task that employee with performing a different position with more responsibilities, but for the same salary in the contract, the statute would have no purpose. "We will 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void[,] or insignificant.'" Sanchez v. Fitness Factory Edgewater, LLC, 242 N.J. 252, 261 (2020) (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 172 (1999)).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0917-20